UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:14-cv-01112-CDP ) ) JURY TRIAL DEMANDED |
| INSURANCE COMPANY OF NORTH AMERICA, PACIFIC EMPLOYERS INSURANCE COMPANY, AND ANHEUSER-BUSCH, LLC, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANHEUSER-BUSCH, LLC'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Zurich sold AB an insurance policy that expressly promised to pay all sums that AB may be obligated to pay arising from claims for bodily injury.  AB was sued for just such a claim in the underlying asbestos bodily injury lawsuit.  Zurich defended and settled the claim, as it was required to do, then properly sued INA for contribution.  But Zurich subsequently amended its complaint to seek contribution from AB as well, which it cannot do.  In effect, Zurich is asking this Court to rewrite the insurance contract, replacing the "all sums" language with a pro rata clause and depriving AB of the coverage it purchased.

The relevant facts are undisputed and are the subject of a joint stipulation.  After AB was sued in an asbestos bodily injury case ("Underlying Lawsuit"), it "target tendered" to Zurich under a specific policy – the one on the risk when the first exposure allegedly occurred.  Zurich accepted the tender.  The case settled for $1.5 million, all of which was paid by Zurich.  In

1

documenting the settlement, Zurich reserved the right to seek contribution from INA but *not* from AB.

Zurich's complaint against AB is without merit.  In return for a substantial premium, Zurich agreed to pay "all sums" that AB was legally obligated to pay in connection with a claim such as the Underlying Lawsuit.  Courts applying Missouri law have uniformly enforced this all sums language and rejected the notion that the insurer's obligation is to pay only a pro rata share of the loss.  Yet, with no supporting case authority whatsoever, Zurich is asking this Court to effectively re-write the insuring agreement to allow it to circumvent the "all sums" language by permitting it to pursue contribution from AB.  This the Court cannot do.

An insurer that pays a loss may seek equitable contribution from another insurer that also provided coverage for a progressive injury such as asbestosis.  Zurich may have a viable claim for contribution against INA but it does not have a right to contribution from AB.  Missouri has never permitted an insurer to pursue equitable contribution against its own insured and for good reason: to do so would fly in the face of the insurance contract and would be unjust.  Zurich's complaint against AB should be dismissed and judgment entered in favor of AB.

## II.     FACTUAL BACKGROUND

After AB was sued in the Underlying Lawsuit, it tendered the matter to ZAIC under policy GA 85-79-000, the policy on the risk when Mrs. Tansey was allegedly first exposed to asbestos by way of the clothes of her husband. (SOF ¶ 1)[1]  ZAIC, through its claims examiner Kelli Belpedio, acknowledged the tender in February 2013 and sought to involve additional insurers on the risk during the alleged exposure period.  (SOF ¶ 2) AB, through its associate general counsel Seth Hawkins, provided details regarding the policies issued by INA.  (SOF ¶ 3)

---

[1] All citations are to AB's Statement of Undisputed Facts ("SOF").  The SOF cites to the parties' Joint Stipulation of Undisputed Facts which, along with the supporting exhibits, is incorporated by reference herein.

However, AB made it clear from the outset that it was seeking coverage from ZAIC, not INA, and was targeting ZAIC Policy 85-79-000.  (SOF ¶ 4) Nonetheless, AB agreed to and did cooperate with ZAIC in its attempt to involve INA.  (SOF ¶ 5)  AB also advised ZAIC of the deductibles and asbestos exclusions in the INA policies. (SOF ¶ 5)

A mediation took place in the Underlying Lawsuit on September 26, 2013. (SOF ¶ 6) Just prior to the mediation, AB and ZAIC corresponded regarding ZAIC's contention that it was entitled to limit its settlement contribution using a pro rata time on the risk formula, and AB's contention that it was entitled to look to Policy 85-79-000 for the entirety of the defense and settlement.  (SOF ¶ 7)  ZAIC did not respond to AB's email of September 24, 2013 distinguishing the legal authorities provided by ZAIC and providing case law support for AB's position.  (SOF ¶ 7)  ZAIC also elected not to attend the mediation.  (SOF ¶ 8)  However, due to the amount of the plaintiff's demand, the issue of the limits of ZAIC settlement authority did not arise. (SOF ¶ 8) Shortly thereafter, Ms. Belpedio left ZAIC and the file was transferred to Brett Tatara. (SOF ¶ 9)

In January 2014, a second mediation took place.  (SOF ¶ 10)  Representatives for A-B and ZAIC attended the mediation but no one attended on behalf of INA.  (SOF ¶ 10)  At the mediation, the underlying plaintiffs made a settlement demand of $1.5 million and A-B requested that ZAIC settle the Underlying Lawsuit for that sum.  (SOF ¶ 10)  This time, ZAIC did not claim that it was only required to pay a pro rata share of the settlement or that its total available limits were $900,000.  (SOF ¶ 11)  Instead, ZAIC agreed to and paid the full $1.5 million required to settle the Underlying Lawsuit.  (SOF ¶ 11)  In conjunction with the settlement, ZAIC reserved the right to seek contribution from INA but it did not purport to reserve the right to seek contribution from AB. (SOF ¶ 12)

3

ZAIC filed the instant action against INA and PEIC on June 18, 2014. (SOF ¶ 13) In January 2015, ZAIC filed the Amended Complaint naming AB as a defendant. (SOF ¶ 13)

### III. RELEVANT POLICY PROVISIONS

ZAIC Policy GA 85-79-000 was in effect from July 1, 1967 to July 1, 1972. ("Policy") It provides coverage for personal injury and property damage arising from use of automobiles (Coverage A and B), personal injury and property damage arising from liability other than automobiles (Coverage C and D) and advertising liability. (SOF ¶ 14)  Coverage C is the coverage applicable to this loss.  The coverage grant states, in pertinent part**:**

> Zurich will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay because of … personal injury … to which this insurance applies, caused by an occurrence and arising out of … operations of the insured, and Zurich shall have the right and duty to defend any suit seeking damages … on account of such personal injury…. (SOF ¶ 15)

Coverage C provides limits of $100,000 per occurrence. (SOF ¶ 16)   In addition, the policy contains an Excess Liability Endorsement which provides in relevant part:

<p align="center">Excess Liability Endorsement</p>

> The Company agrees with the Named Insured to pay on behalf of the Insured all sums for which the Insured may be obligated to pay by reason of the liability (A) imposed upon the Insured by law, or (B) assumed under contract or agreement … for damages …as more fully defined by the term "ultimate net loss" on account of personal injuries, including death at any time resulting therefrom …, caused by or arising out of each occurrence happening during the policy period anywhere in the world.

> Limit of Liability

> The Company shall only be liable for the ultimate net loss in excess of either (1) the amount recoverable under underlying insurances as set out in the attached schedule or (2) $100,000 ultimate net loss ….     (SOF ¶ 17)

### IV. LEGAL ARGUMENT

**A. By the Express Terms of Policy Number 85-79-000, Zurich was Obligated to Pay "All Sums" that AB was Legally Obligated to Pay in Connection with the Underlying Lawsuit.**

Zurich contends that INA and/or AB are liable for a portion of the settlement payments made in the resolution of the Underlying Lawsuit. Zurich has sued both INA and AB for equitable contribution, subrogation and unjust enrichment seeking to recover a portion of the defense and settlement costs incurred. Whatever *equitable* claims Zurich may have against INA, its rights and obligations as to AB are controlled by the insurance *contract* between them. The Policy required Zurich to pay "all sums" for which AB may be liable with respect to the Underlying Lawsuit. Neither the Policy, nor controlling case law, nor equity permit Zurich to circumvent the express policy language by asserting contribution, subrogation or unjust enrichment claims against AB. Because the Policy contains "all sums" language and does not provide for pro rata allocation, Zurich's attempt to limit its obligation vis-à-vis AB must fail.

It is undisputed that Missouri law governs this action. Although some states faced with the "all sums" versus pro rata debate ignore the policy language in favor of judicially created constructs, Missouri is not one of them. If policy language is unambiguous, the policy will generally be enforced as written. Where the language is ambiguous, it will be construed against the insurer because "insurance is designed to furnish coverage, not defeat it." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. Supr. 1992)(*en banc*).

Monsanto Co. v. C.E. Health Compensation & Liab. Ins. Co*.,* 652 A.2d 30 (Del. Supr. 1984) was a dispute between Monsanto and its insurers arising out of pollution claims occurring over multiple policy periods. Monsanto argued the "all sums" analysis applied while its insurers claimed the loss was to be allocated pro rata based upon the length of coverage. The Supreme Court of Delaware, applying Missouri law, undertook a detailed analysis of relevant precedents and concluded the plain language of the policies dictated the "all sums" approach.

In Monsanto, the insurance policy provided that the insurer would indemnify the

5

policyholder "for *all sums* which the Assured shall be obligated to pay … for damages, direct or consequential, and the expenses, all as more fully defined by the term 'ultimate net loss' on account of Property Damage caused by or arising out of each occurrence."  Id.at 33 (emphasis in opinion). The term "occurrence" was defined as an "accident or happening or event or continuous or repeated exposure to conditions which unexpectedly and unintentionally results in … property damage … during the policy period." Id.

The Monsanto court first discussed pro rata clauses, which are designed to limit coverage and therefore, under Missouri law, are exclusions which cannot be read into a policy.  While insurers may limit their coverage obligations by using pro rata provisions, such limitations must be explicit, plain and unequivocal. Id. at 33-34.  "Conversely, the Missouri Court of Appeals has held that where a policy is *silent* on proration, the insurance company is jointly and severally liable to the full extent of the policyholder's loss (i.e., "all sums").  Id. at 34.

Turning to the policy language before it, the Monsanto court stated:

A policy is activated by bodily injury or property damage that takes place "during the policy period." The triggering language in Monsanto's insurance policies does not define the extent of coverage.  Once a policy is on the risk, the unambiguous policy language requires the insurance company to pay "all sums" for which its policyholder became liable, up to the policy limits.

Id. at 34-35. Given the unambiguous "all sums" language and the absence of an explicit pro rata provision, the Court reversed the lower court and concluded pro rata allocation did not apply.

Monsanto's prediction that the Missouri courts would not read a pro rata clause into similar policies proved to be correct.  In Viacom, Inc. v. Transit Cas. Co., 2004 Mo. App. LEXIS 292, 2004 WL 414157 (Mo. Ct. App. Mar. 2, 2004), Westinghouse sued Transit for coverage for claims arising from bodily injury allegedly due to asbestos exposure.  Although the key to the decision was the appellate court's determination that Pennsylvania law applied, the opinion goes into some detail regarding the "all sums" versus pro rata question.  Id. at 34-35. Looking to the

6

language of the policies, the court applied the Pennsylvania "all sums" approach.  Significantly, the court added that, even if Pennsylvania law had not governed the dispute, Missouri would have likewise taken the "all sums" approach:

> Although Missouri has not decided this allocation question, we find Pennsylvania's analysis persuasive.  The policies specifically state that Transit is liable for all sums that Westinghouse must pay for any bodily injury due to an occurrence, which is an event during the policy period.  Since there was exposure to asbestos during Transit's policy period, and this exposure eventually led to the asbestos-related diseases Westinghouse is now responsible to pay for, Transit is liable for those sums.  Under Missouri rules of contract interpretation, where an insurance policy is unambiguous, it must be enforced as written.

Id. at 35.  The opinion goes on to observe that "applying a pro rata allocation rewrites the insurance policies and results in a construction favorable to the insurer both of which are not allowed under Missouri law. So even if we had decided that Missouri law applies to this case, the same result would ensue." Id.  The Missouri Supreme Court, adopting portions of the appellate court opinion verbatim, tacitly rejected the "pro-rata" method, concluding Pennsylvania law, and its "all sums" rationale, applied to the dispute.  Viacom, Inc. v. Transit Cas. Co., 138 S.W.3d 723 (Mo. 2004)

The most recent decision construing Missouri law on this question follows the rationale of Monsanto and Viacom.  In 2013, the Court of Appeals for the Eastern District of Missouri revisited the "all sums" versus pro rata allocation debate in Doe Run Res. Corp. v Certain Underwriters at Lloyd's London, 400 S.W.3d 463 (2013).  Doe Run sought coverage for environmental remediation costs under seven excess policies issued by Lloyd's for contamination that had migrated from a number of sites over many years.  The damage resulted from Doe Run's mining and milling operations which generated lead-containing wastes in chat piles and tailings ponds. Id. at 467.  After the jury found coverage under all of the policies and awarded Doe Run over $62 million in remediation cost damages, the trial court, applying New York law, allocated the loss pro rata and reduced the verdict to just over $5 million.  Id.

7

The Court of Appeals reversed and remanded with instructions to reinstate the jury's verdict. After determining Missouri law applied, the appellate court found "the express language of the applicable insurance policies requires the adoption of the all sums allocation scheme in this case." Id. at 474. Noting the rules of construction require the courts to give effect to the parties' intent by enforcing the insurance contracts as written, the Doe Run court simply read the plain and unambiguous language of the policies:

> The plain language of the applicable insurance policies requires the adoption of the all sums allocation scheme in this case. Under the 1952-1958 policies, LMI agreed to indemnify Doe Run for the ultimate net loss. The policies define "ultimate net loss" as the "*total sum* which the assured, or any company as his insurer, becomes obligated to pay by reason of personal injury or property damage claims … as a consequence of any occurrence covered hereunder."
> 
> ***
> 
> The policies define occurrence as "one happening or series of happenings, arising out of, or due to one event taking place during the term of this policy." This definition does not limit the policies' promise to pay all sums of the policy holder's liability solely to damage during the policy period. We must construe the policy as written and cannot rewrite the policy for the parties. Parkmark Corp. v Liberty Mut. Ins. Co., 943 S.W.2d 256, 259 (Mo.App. E.D.1997.) We find the express language of the applicable insurance policies requires the adoption of the all sums allocation scheme to this case.

Id. at 474-475.

The relevant provisions of the Zurich Policy are even more clear and straightforward than that in Monsanto and Doe Run. In Section I. Zurich promised:

> Zurich will pay on behalf of the Insured *all sums* which the Insured shall become legally obligated to pay because of … personal injury … to which this insurance applies, caused by an occurrence and arising out of … operations of the insured, and Zurich shall have the right and duty to defend any suit seeking damages … on account of such personal injury….

(SOF ¶ 15)  (Emphasis added.)

Zurich does not dispute that the Underlying Lawsuit alleged personal injury (exposure to asbestos fibers) while Zurich Policy GA 85-79-000 was in effect. Indeed, Zurich admits the Underlying Lawsuit is covered by its policy. (Amended Complaint, para. 28-29) The limits of

8

the Policy are more than adequate to cover the entire settlement of the Underlying Lawsuit.[2] The only issue is whether the Policy requires Zurich to pay "all sums" which AB became legally obligated to pay, or just a pro rata share of those damages based upon Zurich's time on the risk.

The Policy expressly provides that, once coverage is triggered, Zurich will pay "all sums" which AB is legally obligated to pay. The Policy does not contain an explicit pro rata clause. Nor does it anywhere limit the coverage to that particular damage that occurs during the policy period. (SOF ¶ 18) As such, AB was entitled to look to the Zurich Policy, alone, for the full defense and settlement of the Underlying Lawsuit.

Because Zurich contracted with AB to pay all sums arising out of a covered loss, Zurich's contribution action against AB must necessarily fail. By seeking contribution from AB based on a pro rata time on the risk formula, Zurich is effectively rewriting the policy to delete the all sums language and replace it with a pro rata clause. Zurich cannot re-write the policy after the fact. This Court should state unequivocally that Missouri law mandates application of all sums language when it appears in the policy and such language is antithetical to the notion that the insurer can seek contribution from its insured on a pro rata equitable contribution theory.

### B. Applying Pro Rata Allocation Principles to AB Would Be Inequitable and is Not Supported by Missouri Law.

The relationship between policyholder and insurer is a contractual one and the terms of the insurance agreement control their respective rights and obligations. Where, as here, an insurer pays a covered loss on the policyholder's behalf, that insurer is entitled to seek contribution *from other similarly situated insurers*. The right to equitable contribution is a judicially created one and exists precisely because there is no contractual relationship between

---

[2] During the 1971-72 policy period (the year Mrs. Tansey was allegedly first exposed to asbestos and the specific policy year targeted by AB) the Policy included an Excess Endorsement providing $25 million in coverage above the scheduled underlying limits of $100,000.

9

Case: 4:14-cv-01112-CDP   Doc. #:  81   Filed: 05/23/16   Page: 10 of 17 PageID #: 2510

successive insurers who cover the same progressive injury. Allocation principles arose in the context of contribution claims among insurers, not between insurers and policyholders. The rationale for allocation was fairness - to allow an insurer who paid a claim to recover from other, similarly situated insurers.[3] However, the principle of equitable contribution has no place in the policyholder/insurer relationship.

Missouri courts have never permitted an insurer to seek equitable contribution from its policyholder. While no Missouri court has directly addressed the precise issue presented here, when faced with similar situations, they have consistently looked to the express language of the insurance policy rather than rewrite the policy to include terms not agreed to by the parties. (See Doe Run and Viacom, supra.) The Policy does not include language giving Zurich the right to seek contribution from AB after paying a covered claim. Nor does the Policy include language limiting Zurich's obligation to only a pro rata share of the defense costs and settlement. Instead, it contains "all sums" language which required Zurich to pay the entire loss and which is inconsistent with the notion that a right to contribution should be read into the policy.

In Zurich's original (but subsequently withdrawn) summary judgment motion, it cited no cases that support its claim for equitable contribution from AB. At best, the cases upon which Zurich relied suggest that, in a dispute *between successive carriers* in a progressive loss scenario, allocation based on each insurer's time on the risk would likely be favored. Nothing in those cases can be read to support Zurich's claims against its insured, AB.

In Continental Cas. Co. v. Med. Protective Co., 859 S.W.2d 789 (Mo. App. E.D. 1993), the underlying claimant sued for dental malpractice. The alleged malpractice took place over a twenty year period during which time the dentist was insured against professional negligence by

---

[3] For a thorough discussion on this issue See Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal.App.4th 1, 56 (1996).

three different carriers. Id. at 790.  The coverage was provided under a series of professional liability policies that were triggered by the negligent acts of the insured (not by the resulting damage as would be the case in a general liability policy).  Id. at 791  The carriers who paid the settlement sought a declaration as to how the settlement should be apportioned among them. The trial court, focusing on the policies' "other insurance" clauses, had apportioned the loss pro rata based on the carriers' respective policy limits. Id. The appellate court reversed, stating:

> Where the loss is caused not by a single event but by a series of cumulative acts or omissions, we believe the fair method of apportioning the loss among consecutive insurers is by application of the "exposure theory" utilized in cases of progressive disease such as asbestosis. (Citation omitted.)

Id. at 792.  The court went on to conclude that proration based on each carrier's time on the risk, rather than its policy limits, was most fair. Id.

Although informative as to how a progressive loss should be prorated among consecutive carriers in certain circumstances, Continental does not support Zurich's claim against AB in this case.  First, in Continental the insurers did not seek to hold the policyholder responsible for any portion of the loss.  Second, the policy language at issue would have been dissimilar to that involved here (given the significant difference between general liability "occurrence" policies and professional liability "claims made" policies). Third, the appellate court rejected the applicability of the "other insurance" clauses in a progressive loss situation, yet Zurich quotes the "other insurance" clause in its policy in connection with its contribution claim. Finally, the real crux of the case was that proration based on time (rather than limits) was the most equitable way to allocate among the carriers.  In short, the case provides no authority for Zurich's contribution claim against its own insured.

Zurich also cited Nationwide Ins. Co. v. Central Mo. Elec. Coop. Inc., 278 F.3d 742 (8th Cir. 2001).  Nationwide was likewise a dispute among insurers regarding allocation of a loss

11

they had already settled on the insured's behalf.  That case involved a defective transformer installed on a dairy farm that caused multiple, distinct injuries to the underlying claimant farmers over a period of years. Id. at 744, 747.  The court concluded that the injuries triggered multiple policies in place from 1985 through 1991 under either an injury in fact or an exposure theory. Id. at 747.  Even though the underlying claimants suffered distinct damage in each policy year, the appellate court concluded the trial court did not err in utilizing a "time on the risk" analysis given the complexities of the precise timing of the claimants various injuries. Id. at 747-48.  Because the insurers had paid the settlement and were not seeking contribution from the insured, the "all sums" issue was not before the Nationwide court.[4]

The cases upon which Zurich relies involved situations entirely dissimilar from this case.  The insurers in Nationwide and Continental all agreed the loss should be allocated among them without contribution by the insured; they simply could not agree upon the appropriate allocation method.  AB is aware of no Missouri case that supports the notion that an insurer who has paid a settlement pursuant to a policy containing "all sums" language may then turn around and seek equitable contribution from its insured for any portion of that settlement.

### C. Zurich's Conduct is Inconsistent With its Belated Efforts to Obtain Contribution from AB.

AB contends the Policy unambiguously required Zurich to pay all sums incurred in connection with the defense and settlement of the Underlying Litigation.  To the extent the Policy is ambiguous, it must be interpreted against Zurich. Moreover, Zurich's conduct demonstrates that Zurich itself does not really believe it is entitled to contribution from AB.

---

[4] One of the insurers did seek a declaration that it had no obligation to indemnify the insured for damages that were barred by the statute of limitations.  However, the court found that the entire settlement reflected damages that occurred during the insurers' policy periods. Id. at 748.

Just prior to the first mediation in the Underlying Lawsuit, AB sought settlement authority from Zurich. Zurich took the position that it owed a maximum of $900,000 based on a horizontal exhaustion, time on the risk analysis. (Nine years of coverage with primary limits of $100,000 per year.) AB asked Zurich for the legal authority for its position and Zurich identified two cases it claimed supported its time on the risk limitation. AB responded by explaining why neither of the cases cited by Zurich were applicable (neither involved a progressive loss over multiple policy periods nor even mentioned allocation or horizontal exhaustion), and cited Viacom and Doe Run as controlling precedent. Zurich never responded to this email or otherwise disputed the accuracy of AB's analysis. (SOF ¶ 7)

Due to the amount of the underlying plaintiff's demand, the first mediation was unsuccessful. Some months later, a second mediation took place. This time, the underlying plaintiff agreed to accept $1.5 million and AB asked Zurich to pay that sum. (SOF ¶ 10) Zurich did so, notwithstanding its previous position that it had only $900,000 in available limits, strongly suggesting that Zurich realized its previous position was not well founded.[5] (SOF ¶ 11) And in agreeing to pay the settlement, Zurich reserved the right to seek contribution from INA but *not* from AB. Zurich elected not to reserve the right to seek contribution from AB despite the fact that it knew the INA policies contained large deductibles and many of them contained asbestos exclusions. (SOF ¶ 12)

When Zurich filed the instant action, it chose to sue only INA (and PEIC), not AB. Even now, Zurich acknowledges that it does not contend AB owes it contribution based on the

---

[5] AB and Zurich are involved in a dispute over documents withheld from the claims file on the basis of attorney client privilege and work product and AB is in the process of preparing a motion to compel. Despite the limited document production, the Zurich claims file indicates that, after reading AB's legal authorities, Zurich acknowledged that AB's position was probably correct. However, Zurich failed to acknowledge this fact to AB. Given that Zurich has advised it is not directing its summary judgment motion at AB, and because AB's waiver, estoppel and unclean hands defenses are not relevant to this motion, AB will wait to include such evidence in its opposition or reply papers should it prove necessary.

13

deductibles in the INA policies. Instead, it believes INA is making that contention (even though INA has not sued AB). As far as Zurich is concerned, responsibility for the deductibles in the INA policies, which Zurich alleged in its Amended Complaint are owed by AB, "is an issue between A-B and INA, and it's really none of [Zurich's] business." (SOF ¶ 21)

Zurich paid the entire underlying settlement. (SOF ¶ 22) In doing so it paid an amount that can only be justified by acknowledging that its policy limits include those set forth in the Excess Endorsement and the "all sums" language mandated that it pay the entirety of a reasonable settlement demand. Zurich did what it was supposed to do vis-a-vis AB based on the insurance contract between them. Zurich's fight is with INA, which declined to participate in the defense or settlement of the Underlying Suit. AB should not have been added as a defendant in this action and AB by this motion seeks to rectify that error. The first count seeking equitable contribution against AB should be dismissed.

### D. Zurich's Claims for Subrogation and Unjust Enrichment Against AB Must Be Dismissed.

Zurich's second count is for "equitable subrogation." Despite that title, Zurich appears to base the claim on the subrogation provisions in its policy, which are quoted on pages 6 and 7 of the Amended Complaint. At least as to AB, the claim appears to be one for contractual rather than equitable subrogation. But either way, the claim is nonsensical.

The Policy provides that, in the event Zurich makes a payment under the policy, it "shall be subrogated to all of the insured's rights of recovery …" No citation to authority is required for the proposition that Zurich cannot stand in AB's shoes to seek recovery *against AB*. Indeed, Zurich has admitted as much. (SOF ¶ 19)  The second count must be dismissed.

The third count in Zurich's complaint is for unjust enrichment. A claim for unjust enrichment has three elements: (1) a benefit conferred by a plaintiff on a defendant; (2) the

defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable. Hertz Corp. v. RAKS Hospitality, Inc., 196 S.W.3d 536, 543 (Mo. App. E.D. 2006). Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment and also the most difficult to establish. Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr., 280 S.W.3d 678, 697 (Mo. App. W.D. 2009). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." Id.

It is undisputed that AB paid a premium to purchase the Zurich Policy. (SOF ¶ 23.) To the extent Zurich conferred a benefit on AB by defending and settling the Underlying Lawsuit, it merely paid what it was contractually obligated to pay.  AB was not unjustly enriched by Zurich's settlement of the Underlying Lawsuit, thus the third count must be dismissed.

## V.     CONCLUSION

The unambiguous language of the Policy required Zurich to pay all sums AB was obligated to pay where, as here, there was undisputedly bodily injury during the Policy period. In defending and settling the Underlying Lawsuit, Zurich did what it was contractually obligated to do.  The principle of equitable contribution applies as between insurers, not as a means to circumvent policy language by forcing the policyholder to share a risk it paid its insurer to assume. Zurich has not, and cannot, point to policy language or controlling case law to support its claims for equitable contribution, subrogation or unjust enrichment against AB.

AB respectfully requests this Court grant summary judgment in favor of AB on the ground that, as a matter of law, Zurich is not entitled to any of the relief sought in the Amended Complaint.

Dated: May 23, 2016 BOWLES & VERNA LLP

By: */S/ Robert I. Westerfield*
ROBERT I. WESTERFIELD
BOWLES & VERNA, LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA 94596
rwesterfield@bowlesverna.com
Telephone:  925-935-3300
Facsimile:  925-935-0371

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 23, 2016, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing upon all attorneys of records.

By:   */S/ Robert I. Westerfield*