UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) | Cause No. 14-1112 |
| | ) | |
| vs. | ) ) | |
| INSURANCE COMPANY OF NORTH AMERICA, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**INA'S MEMORANDUM OF LAW IN SUPPORT OF
IT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Zurich American Insurance Company ("Zurich") seeks to recover from Anheuser-Busch (A-B) and the Insurance Company of North America ("INA") a portion of its costs incurred in defending and settling an environmental pollution claim brought by Francis Cotter, the executor for the estate of Elizabeth Tansey. Zurich's claim against INA should be denied because the two insurers do not share the same obligations regarding the claim. The INA policies each contain a Pollution Exclusion that bars coverage. Additionally, the INA policies have large deductibles and the parties have stipulated that A-B is obligated to pay damages within the deductibles. Unlike INA, Zurich has no Pollution Exclusions or deductibles. A-B tendered the *Cotter* claim solely to Zurich and expressly refused to tender the claim to INA.

The *Cotter* complaint alleged that Mrs. Tansey was exposed to toxic chemicals and asbestos which were released from an A-B brewery in Newark, New Jersey. The underlying

claim against A-B is an environmental pollution case, as the air that Mrs. Tansey inhaled was allegedly contaminated with toxic dust from A-B's brewery.  Zurich has stipulated that the theory of the underlying case is that Mrs. Tansey's bodily injuries were caused by her inhaling and ingesting dust and fibers released from the A-B brewery and that she inhaled these toxic pollutants for decades.  Her husband, Robert Tansey, was employed at the brewery and he allegedly gathered dust on his body and clothing.  The *Cotter* Complaint alleged that at all times A-B "was aware of the need for proper hygiene procedures to insure that toxic chemicals and substances such as asbestos containing dust were not carried home on the employees' person and their work clothing."  Stipulation at Ex. 1, Eighth Count ¶4.

Zurich admits that its policies do not have any exclusion for the claims made by Elizabeth Tansey's estate.  In contrast, the INA policies do not cover claims based upon the exposure to irritants or contaminants unless the release of the irritants or contaminants was sudden and accidental.  The Missouri Court of Appeals has recognized that asbestos is a contaminant and irritant within Pollution Exclusions.  As for the "sudden and accidental" exception to the exclusion, the party seeking coverage (i.e. Zurich) has the burden of proof.  Given the underlying allegations of long term exposure and the fact that the underlying allegations state that A-B was aware of the risk that toxic dust would be distributed from the brewery, Zurich cannot meet its burden of proof.

A-B's decision to forgo coverage from INA is further supported by the large deductibles that A-B must pay before INA has any obligation, in contrast to Zurich which admits that it had the obligation to pay without any deductibles.  The undisputed fact that A-B is obligated to pay damages within the deductible is based upon Paragraph 4 of the Deductible Endorsements found at Exhibit 5 of the parties' Joint Stipulation.  Zurich admits in its Second Amended Complaint

that INA is not obligated to pay damages within the deductible and, instead, A-B has the

obligation.  (Second Amended Complaint at ¶¶12, 29)  More recently, Zurich and A-B stipulated

that INA's policies state that A-B is responsible for the damages within the deductibles.  (Joint

Stipulation at ¶11)  Consequently, even aside of the Pollution Exclusion, INA is not obligated to

share the underlying settlement with Zurich.  If the underlying settlement is allocated on a pro

rata basis among fifteen years of coverage, each policy year is allocated $100,000.  That sum is

within the deductibles which are $250,000 per year from 1980 to 1986 and $1 million per year

thereafter.  Because the policies are clear that A-B has the obligation to pay damages within the

deductibles, Zurich is not entitled to recover from INA.

INA incorporates herein INA's Statement of Uncontroverted Facts.

## LEGAL ARGUMENT

## I.     THE POLLUTION EXCLUSION IN INA'S POLICIES BAR COVERAGE

The *Cotter* Complaint alleged that Elizabeth Tansey inhaled and ingested dust and fibers,

thereby contracted mesothelioma as a result of her husband's employment at an A-B brewery.

(Stipulation at ¶2, Ex. 1, pp. 3-24)  Specifically, the lawsuit alleged that Mrs. Tansey's husband,

Robert Tansey, carried asbestos and asbestos dust from an A-B brewery where he worked for

decades, and she, in turn, came into contact with this dust on the person of Mr. Tansey and while

laundering his work clothes. (Stipulation at Ex. 1, pp. 3, 13-33)  The Complaint alleged that A-B

"was aware of the need for proper hygiene procedures to insure that toxic chemicals and

substances such as asbestos containing dust were not carried home on the employees' person and

their work clothes."  (Stipulation at ¶2 and Ex. 1, p. 29).  The *Cotter* Complaint further alleged

that A-B was aware of the dangers of asbestos "to all those foreseeably exposed to asbestos,

including family and household members of Anheuser-Busch employees."  (Stipulation at Ex. 1, Eighth Count ¶3)

Martin Abbate testified that he and Mr. Tansey had the same job at the brewery, performing maintenance on instrumentation.  He testified that they were in frequent contact with asbestos and that it was all over their clothing.  He testified that A-B provided no uniforms or laundry service and they worked in their "street clothes."  Consequently, they took whatever dirt, dust and grease with them when they left the job.  *See* Joint Stipulation at ¶3 and INA Statement of Uncontroverted Facts at ¶¶11-13.

The claim against A-B was not a products liability asbestos case.  There was no A-B product (e.g. Budweiser) at issue.  Instead, the plaintiff claimed that the air that Mrs. Tansey inhaled and ingested was contaminated with toxic chemicals and asbestos dust. Unlike Zurich's policies, each of INA's policies has a Pollution Exclusion which precludes coverage for bodily injury arising from the release of irritants or contaminants into or upon the land or the atmosphere. The Pollution Exclusions state as follows:

THIS INSURANCE DOES NOT APPLY:

….

(L)  Under coverage C (Personal Injury Liability, Other Than Automobile)…to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, or escape is sudden and accidental.

(Tabas Ex. 3, INA000114) (In some years this exclusion is set forth in Exclusion O).

The Missouri Court of Appeals has recognized that asbestos dust is an irritant or contaminant and within pollution exclusions.  In *Cincinnati Ins. Co. v. German St. Vincent*

*Orphan Ass'n*, 54 S.W.3d 661 (Mo. App. E.D. 2001) the policyholder, the German St. Vincent Orphan Association in St. Louis County (hereinafter "St. Vincent"), sought coverage for damage to its building resulting from the spread of dust containing asbestos.  Saint Vincent hired a contractor to remove old flooring on the first floor of its premises.  The contractor used a propane powered floor stripper that pulverized and scraped up the old vinyl flooring.  In so doing, they generated dust containing asbestos which spread throughout the first floor and other parts of the building.  The policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste…." *Id.* at 663.

The policyholder in *Cincinnati Insurance* argued that the definition of "pollutant" was vague and overbroad because "there is virtually no substance or chemical that would not irritate or damage some person or property." *Id.* at 665.  The Court of Appeals held that the pollution exclusion applied to exposure to asbestos within the building:

> …we find that friable asbestos unquestionably falls into the category of a solid or thermal "irritant" or "contaminant" as those words appear in [the policy], defining "pollutant," and is therefore a pollutant as that term would be understood by a reasonable person in the position of the insured.  Thus, we find that the policy's definition of "pollutant" is not vague, ambiguous or overbroad.

*Id.* at 666.

The Missouri Court of Appeals has applied pollution exclusions to other irritants or contaminants regardless of whether they are traditionally considered pollutants.  In *Casualty Indem. Exch. v. City of Sparta,* 997 S.W.2d 545 (Mo. App. S.D. 1999), the Court found that a commercially-used fertilizer constituted a pollutant even if it was not hazardous. The policyholder was the City of Sparta.  The City operated a wastewater treatment facility.  Solid

components were removed from the wastewater in the form of a sludge.  The City gave or sold
sludge to a farmer for use as fertilizer.  A neighbor of the farmer sued the City alleging that the
sludge contained toxic chemicals.  The City argued that the pollution exclusion did not apply
because the chemicals within the sludge were not hazardous as defined by environmental laws
and were being used in a commercial manner.  The Court of Appeals rejected the argument,
finding that the exclusion did not require that the sludge had to be hazardous material.  *Id.* at 550.

In *Heringer v. Am. Family Mut. Ins. Co.,* 140 S.W.3d 100 (Mo. App. W.D. 2004), the
Court of Appeals applied the pollution exclusion to a claim involving exposure to lead paint
while scraping the paint from the interior and exterior of a house.  Citing *Cincinnati Insurance*
and *City of Sparta*, the Court of Appeals rejected the argument that the pollution exclusion was
intended to apply to "traditional environmental pollution" and not to "exposure to lead paint
while working in a residential setting." *Id.* at 105.

In *Boulevard Inv. Co. v. Capitol Indem. Corp.*, 27 S.W.3d 856 (Mo. App. E.D. 2000), the
Eastern District Court of Appeals held that the pollution exclusion applies to a claim by the
owner of a building against a tenant restaurant.  Kitchen grease blocked the plumbing system in
the building.  The Court concluded that the grease came within the definition of the pollution
exclusion.

Consistent with the overall trend of the Missouri Court of Appeals decisions, the federal
courts in Missouri found the pollution exclusion applicable in the following settings:

- An acrylic concrete sealant used within an office building that, due to inadequate
  ventilation, infiltrated into offices where workers were exposed to the fumes.
  *United Fire & Cas. Co. v. Titan Contrs. Serv.,* 751 F.3d 880 (8th Cir. 2014)
  (applying Missouri law).

- Salt from a smelting process.  *Cont'l Ins. Co. v. Shapiro Sales Co.,* 2005 U.S. Dist. LEXIS 43015 (E.D. Mo., Sept. 26, 2005).

- Airborne mold within an apartment complex.  *Am. Home Ins. Co. v. Utopia Acquisition L.P.,* 2009 U.S. Dist. LEXIS 23219 (W.D. Mo., March 24, 2009).

- Lead paint within a house.  *Hartford Underwriter's Ins. Co. v. Estate of Turks,* 206 F.Supp. 2d 968 (E.D. Mo. 2002).

Zurich carries the burden of proving the exception to the pollution exclusion for releases of contaminants that are "sudden and accidental."  *TWA, Inc. v. Associated Aviation Underwriters,* 58 S.W.3d 609, 620 (Mo. Ct. App. 2001).  The parties have stipulated that the *Cotter* case is premised on the theory that Mrs. Tansey inhaled and ingested the toxic chemicals and dust in the air, and that this occurred over several decades.  Despite allegedly having knowledge of the dangers posed by the toxic dust when released from the brewery, and the alleged knowledge that hygienic procedures were necessary, A-B allegedly did not provide a laundry and Mr. Tansey's clothing was allegedly contaminated with dust that he carried out of the brewery into the environment he shared with his wife.  There is no evidence of a sudden and accidental release of the asbestos dust.  Rather the evidence is clear that the alleged exposure to Mr. Tansey, and subsequent exposure to Mrs. Tansey, occurred over several decades and was ongoing.  (Tabas Dep. at 110; Tatara Dep. at 95; Belpedio Dep. at 143-145)

The Pollution Exclusions in INA's policies bar coverage for the *Cotter* lawsuit. Consequently, Zurich's claim against INA must be dismissed.

## II.    THE ALLOCATED DAMAGES DO NOT EXCEED INA'S DEDUCTIBLES

Zurich admits in its Second Amended Complaint that INA is not obligated to pay damages within the deductible and, instead, A-B has the obligation to pay those damages.

Second Amended Complaint at ¶¶ 12, 29.  Consequently, Zurich added A-B as a defendant.  For claims among consecutive (non-concurrent) policies, Zurich contends that Missouri law requires a *pro rata* allocation based upon the time on the risk.  (B. Tatara Dep. at 23).  Here, with 15 policy years[1], each year is allocated $100,000, a sum within the deductibles.  Zurich has no claim against INA because the allocated damages do not exceed the deductibles.

1.      Zurich's Causes of Action Against INA.

Zurich's Second Amended Complaint alleges causes of action against INA and A-B for equitable contribution, subrogation and unjust enrichment.  A cause of action for equitable contribution requires that the plaintiff and the defendant are under a "common burden, obligation or liability."  The mere fact that an insurer pays the entire amount due to a third party does not create a cause of action against a second insurer.  *Commercial Union Ins. v. Farmers Mut. Fire Ins. Co.,* 457 S.W.2d 224, 227 (Mo. App., St. Louis Dist. 1970).  *See also Wentzville Park Assocs., L.P. v. Am. Cas. Ins. Co. of Reading, PA,* 263 S.W.3d 736, 738 (Mo. App. E.D. 2008) ("Equitable contribution is the right to recover from a co-obligor who shares liability with the party seeking contribution); *Centerre Bank, N.A. v. Angle,* 976 S.W.2d 608, 620 (Mo.App. W.D. 1998) (equitable contribution requires that the parties "jointly incurred obligations").

As for equitable subrogation and the related doctrine of unjust enrichment, these claims do not increase an insurer's obligations for contributing to a settlement.  Because the *pro rata* allocation places the damages within the deductibles, INA was not obligated to pay the damages and A-B chose to forgo coverage from INA.  Subrogation and unjust enrichment does not provide relief in such circumstances.  *Keisker v. Farmer*, 90 S.W.3d 71, 73 (Mo. *en banc* 2002) ("Subrogation exists to prevent unjust enrichment"); *Mo. Pub. Entity Risk Mgmt. Fund v. Am.*

---

[1] Zurich has nine years of coverage at issue.  As for INA, in 1986 the deductible was increased to $1 million, a sum that matches the policy limit.  Because the deductible is included within the limit, A-B was self-insured for the entire policy limit.  (Joint Stipulation at Ex. 5 at ¶3; Ascher Affidavit at Ex. A, Tabas Dep. Ex. 3 at ¶2, p.2).

*Cas. Co.,* 399 S.W.3d 68, 73 (Mo. App. W.D. 2013) ("Subrogation is broadly defined as the

'right of one, not a volunteer, who pays another's debt, to recover the amount paid, which in

good conscience should be paid by the one primarily responsible for the loss'").

2.  <u>Pro Rata Allocation Among Insurers.</u>

Zurich and INA agree that Missouri law provides for a pro rata allocation based upon the

time on the risk where there are consecutive, non-concurrent policies during which the bodily

injury occurred.  (B. Tatara Dep. at 23; M. Tabas Dep. at 116-117).  Many of the published

decisions address concurrent policies issued for the same year.  In those circumstances, the

"Other Insurance" clause may provide a means for allocating among concurrent policies.  *See,*

*e.g. Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co.,* 399 S.W.3d 68, 78-80 (Mo. App. W.D.

2013).

In the present case, the policies insure different consecutive years and the policies are not

"concurrent."  Consequently, the "Other Insurance" clauses do not apply in the present case.

Under Missouri law, contribution among consecutive policies is based upon a *pro rata* time on

the risk allocation without regard to the Other Insurance condition.  *Continental Cas. Co. v.*

*Medical Protective Co.,* 859 S.W.2d 789, 791 (Mo. App. E.D. 1993) (holding that "other

insurance" conditions do not apply to policies issued in consecutive years and adopting pro rata

by time on the risk); *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.,* 278 F.3d 742, 747-48

(8th Cir. 2001) (applying Missouri law and allocating among consecutive policies using *pro rata*

time on the risk).

In *Medical Protective*, the Court of Appeals addressed a claim against a dentist for

repeated acts of negligence over a period of twenty years.  Continental Casualty Company

provided two policies covering two years.  Federal Insurance provided three years of coverage.

Medical Protective issued annual policies from 1965 through 1981.  The trial court, relying upon the Other Insurance clauses, allocated the loss among the insurers based upon the policy limits. The Court of Appeals reversed and held that the Other Insurance Clauses do not apply to consecutive policies and that a *pro rata* time on the risk allocation should apply.  The Court reasoned as follows:

> Where the loss is caused not by a single event but by a series of cumulative acts or omissions, we believe the fair method of apportioning the loss among consecutive insurers is by application of the "exposure theory" utilized in cases of progressive disease such as asbestosis.  *See, Insurance Company of North America v. 48 Insulations, Inc.,* 633 F.2d 1212 (6th Cir. 1980). ….
> ….Therefore, proration among the three companies on the basis of the proportionate period of each company's exposure is the fairest method of apportioning the settlement.

*Continental Cas. Co. v. Medical Protective Co.,* 859 S.W.2d at 791-92.

The Eighth Circuit relied upon *Medical Protective* in applying the *pro rata* time on the risk allocation in *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.,* 278 F.3d 742 (8th Cir. 2001).  The case involved allocating damages among consecutive insurance policy years.  A dairy farmer sued an energy supplier that installed a defective transformer.  The irregular supply of electricity allegedly damaged their computerized dairy operations and caused disease in the herd.  The Court recognized Missouri precedent holding that, for insurance policies that limit coverage to "injuries arising during the policy period," the policies exclude from coverage injuries occurring in other years, citing *Universal Reinsurance Corp. v. Greenleaf,* 824 S.W.2d 80, 84 (Mo. Ct. App. 1992) and *Dennis Cain Motor Co. v. Universal Underwriters Ins. Co.,* 614 S.W.2d 275 (Mo. Ct. App. 1981).  The Eighth Circuit went on to affirm the *pro rata* allocation by time on the risk.

3.      INA Is Not Obligated To Pay Damages Within The Deductibles.

In the present motion, INA is not addressing the issue of whether Zurich, which was selected by A-B to solely provide the coverage, may recover from A-B.  Instead, the present motion addresses the fact that INA is not responsible for paying the damages within the deductibles pursuant to paragraph 4 of the Deductible Endorsements and admitted in Zurich's Second Amended Complaint and in the Joint Stipulation.  The general rules of contract construction apply to the interpretation of insurance policies.  Where there is no ambiguity the court enforces the policy as written.  *Lupo v. Shelter Mut. Ins. Co.,* 70 S.W.3d 16, 19 (Mo. App. E.D. 2002).  Here, INA policy ISG 1065 unambiguously states that Anheuser-Busch is obligated to pay the amount of the deductibles.  There is no similar provision in the Zurich policies.  Consequently, INA policy ISG 1065 does not insure the same interest and risk as the Zurich policies.  Moreover, as for defense costs, INA has no obligation to pay for the defense where the claim is resolved within the deductible.  (Joint Stipulation at Ex. 5, ¶¶ 6 and 7)

ISG 1065 was renewed every year from 1980 through 1986.  The Missouri Supreme Court has recognized that a policy renewal creates a new and separate contract for the new period.  *DeWitt v. American Family Mut. Ins. Co.,* 667 S.W.ed 700, 705 (Mo.S.Ct. 1984); *Hester v. American Family Mut. Ins. Co.,* 733 S.W.2d 1, 2 (Mo.App. E.D. 1987).  Beginning in 1986, the policy had matching deductibles whereby the deductible amount equals the policy limits and A-B is self-insured for the full $1 million.  (Tabas Dep. Ex. 3; Joint Stipulation Ex. 5).

Numerous courts have interpreted similar deductible endorsements to require the policyholder to pay the damages within the deductible, and have recognized that the insurer on the deductible policy is not obligated to pay the deductible.  Courts recognize that some large policyholders elect to use deductibles as part of a self-insurance program, with the insurer contributing only in excess of the deductible or not contributing at all where the deductible

"matches" the policy limit.  *See, e.g., Select Build Ill., LLC v. ACE American Ins. Co.,* 2015 U.S. Dist. LEXIS 156878 *12 (N.D. Ill., Nov. 16, 2015) (the deductible is a form of self-insurance that "must be exhausted before the insurer's responsibility kicks in" with the deductible policy serving as a "surety for the insured's ability to pay"); *Nordby Constr., Inc. v. Am. Safety Indem. Co.,* 2015 U.S. Dist. LEXIS 49048 *17 (N.D. Cal, April 14, 2015) (holding that third party could not recover from insurer on deductible policy which explicitly states that the coverage is excess of the deductible); *Transport Ins. Co. v. Insurance Co. of North America*, 59 Cal. Rptr.2d 126 (Cal. App.—2nd Dist. 1996) ("INA had the discretionary right to pay damages, and INA had the unconditional right to reimbursement, all distinguish[ing] INA's fronting policy from a classic insurance policy"); *United States Elevator Corp. v. Associated International Ins. Co.,* 215 Cal. App. 3d 636, 640 (Cal. App.—1st Dist. 1989) (INA policy left policyholder with no indemnity coverage within the deductible); *Tribune Co. v. Allstate Ins. Co.,* 306 Ill.App.3d 779, 784 (Ill. App. 1st Dist. 1999) ("Plaintiffs concede that INA has no duty to indemnify them for their liability because the deductible matches the policy limits of liability"); *Bowman v. Ga. Pac. Corp.,* 2007 U.S. Dist. LEXIS 95989 *18 (M.D. La., March 21, 2007) (holding that the deductible endorsement requires the policyholder to pay within the deductible and "only obligates Pacific Employers with the duty to defend and pay damages when the amount is in excess of the $2,000,000 deductible"); *Forest Ins. v. American Motorists Ins. Co.,* 1994 U.S. Dist. LEXIS 3334 *2 (S.D. N.Y., March 21, 1994) (insurer "bore no obligation to defend or settle claims and no risk of loss" for the deductible amount); *Insurance Co. of N. Am. v. Pyramid Ins. Co.,* 1994 U.S. Dist. LEXIS 3001 (S.D. N.Y., March 16, 1994) (insurer had no right to contribution from second insurer with deductible policies).

Similarly, Missouri courts have recognized that a policyholder may be obligated to pay the deductible before the insurer has any obligation to pay.  *See, e.g. Response Oncology v. Blue Cross & Blue Shield of Mo.,* 941 S.W.2d 771, 772 (Mo. App. W.D. 1997) ("once deductibles and co-payments are met by the insured, the cost of the procedure is paid directly by Blue Cross to the preferred provider…."); *Stix v. Travelers' Indem. Co.,* 157 S.W. 870 (Mo. App. 1913) (requiring that judgment against insurer be reduced by amount of deductible).

In its Motion for Summary Judgment filed in December and later withdrawn, Zurich relied upon a paragraph in the Deductible Endorsement that addresses circumstances where there is an unpaid judgment or other final determination of liability for damages.  Paragraph 1 (c) (in some policies, paragraph 1 (b)) provides that if the Named Insured or a Claims Servicing Organization acting on behalf of the Named Insured "*fails to pay any damages* within the deductible amounts after the *legal obligation* of the Insured becomes *definitely determined,*" then INA shall pay the damages and the Insured shall reimburse INA promptly for the deductible amount.  (Ascher Affidavit at Ex. A, Tabas Dep. Ex. 3 at INA000184).  As recognized in *Select Build,* cited above, the INA policies served as surety for payment in the event that a judgment or other final determination of liability was not paid.  In that instance, INA would pay and A-B would promptly reimburse INA for the deductible amounts.

There are multiple reasons why this surety provision does not apply to the facts of this case.  First, Anheuser-Busch's "legal obligation" to pay "damages" to the underlying claimant was not "definitely determined," as occurs with a final judgment, arbitration award or similar determination of legal liability to pay "damages."  The insurance indemnifies sums which the insured becomes legally obligated to pay as damages because of personal injuries.  A contractual agreement to pay a settlement amount differs from a definite determination that the insured is

13

legally obligated to pay an amount of damages in compensation for personal injuries.  Zurich

admits that "there was not a final determination of Anheuser-Busch's liability in the Cotter

case."  (B. Tatara Dep. at 136).  There was no finding of liability and there was no trial or

judgment. (B. Tatara Dep. at 133-134).  The Settlement Agreement stated that "*by settling this*

*Action*, *no party shall be deemed to have admitted liability or fault with respect to the alleged*

*accident or incident giving rise to the Action or any issues related to the Action.*"  (B. Tatara

Dep. at 136) (emphasis added).  Instead, the potential tort legal liability of A-B *for damages* was

exchanged for a contractual obligation for Zurich and A-B to pay a compromised sum.  There

was no final determination of A-B's legal liability to pay damages but instead there was a

settlement with no admission of liability.

Second, the surety provision was never invoked by the tort claimant, A-B or Zurich.  A-B

and Zurich contracted to pay the settlement amount and the tort claimant was paid.  After

entering the contract and before making the settlement payment, neither A-B nor Zurich asked

INA to pay any portion attributable to deductibles.   INA was not even aware of the settlement

until after this lawsuit was filed.  (B. Tatara Dep. at 151-152; M. Tabas Dep. at 105; S. Hawkins

Dep. at 60).

## CONCLUSION

INA is entitled to a summary judgment ruling that it is not liable to Zurich for the

Underlying Claim.  Zurich provided first dollar coverage and does not have Pollution

Exclusions.  The INA policies have Pollution Exclusions as well as large deductibles that

Anheuser-Busch would be obligated to pay.


Respectfully submitted this 23rd day of May, 2016.

By: /s/ Stephen C. Ascher

Stephen C. Ascher (Admitted Pro Hac Vice)
Cohn Baughman & Martin
333 West Wacker Drive, Suite 900
Chicago, Illinois  60606
Telephone: (312) 753-6600
Facsimile: (312) 753-6601

And

GOLDSTEIN and PRICE, L.C.
  and Alan K. Goldstein, 36214MO
  and Elana Charles, 64775MO
One Memorial Drive, Suite 1000
St. Louis, MO 63102-2449
Telephone:  314-516-1700
Facsimile:  314-421-2832
**Attorneys for Defendants Insurance Company of
North America and Pacific Employers Insurance
Company**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of May, 2016, the foregoing document was served upon the counsel of record via the Court's ECF filing system on all attorneys of record.

/s/ Stephen C. Ascher

15