UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Cause No.: 14-1112 ) ) |
| vs. | ) ) |
| INSURANCE COMPANY OF NORTH AMERICA, PACIFIC EMPLOYERS INSURANCE COMPANY, and ANHEUSER-BUSCH, LLC, | ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Zurich American Insurance Company ("ZAIC"), for its Memorandum of Law in Support of its Motion for Summary Judgment, states:

### I.  INTRODUCTION

ZAIC has brought this action against Defendant Insurance Company of North America ("INA") for equitable contribution, equitable subrogation, and unjust enrichment following ZAIC's payment of $1.5 million in settlement of an underlying wrongful death action on behalf of their mutual insured, Defendant Anheuser-Busch, LLC ("A-B"). In doing so, ZAIC reserved its right to seek contribution from INA for the sums expended on A-B's behalf, a right that A-B has acknowledged and one that A-B agreed to assist ZAIC in exercising against INA.

The underlying wrongful death claim followed Elizabeth Tansey's death from mesothelioma resulting from her exposure to asbestos-containing materials over the twenty-six-year period from 1971 to 1996 during which her husband, Francis Tansey, was employed by A-B. During this period, ZAIC insured A-B for a nine-year period from July 1, 1971, to July 1, 1980. Thereafter, INA insured A-B for a nine-year period from July 1, 1980, to July 1, 1989. A-B also had insurance with INA from 1989 to 1996; however, the INA coverage during those years was subject to an asbestos exclusion.

A-B submitted the claim to ZAIC, requesting that ZAIC provide a defense and coverage, but not to INA. ZAIC accepted coverage, provided a defense, and ultimately indemnified A-B for the claim's $1.5 million settlement. ZAIC also notified INA of the claim and requested that INA participate in the defense and indemnification of their mutual insured. In turn, INA refused to acknowledge coverage and contributed nothing to A-B's defense and indemnification. On these facts, ZAIC now seeks to recover from INA the sums it incurred on A-B's behalf in excess of its proportionate share of ZAIC's and INA's jointly insured liability.

ZAIC is entitled to recoupment from INA under principles of equitable contribution, which applies when several insurers provide coverage for the same loss and one insurer has paid more than its fair share of the liability. *Heartland Payment Sys., L.L.C. v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. App. E.D. 2006). Here, since ZAIC bore the entire cost of defending and indemnifying A-B, ZAIC is entitled to contribution from INA based on the two insurers' "time on the risk."

There is no dispute over the proper allocation method to be applied to ZAIC's contribution claim. INA agrees with ZAIC that each insurer's time on the risk provides the appropriate method for allocating the sums incurred by ZAIC in defense and settlement of the Tansey claim between the two insurers. (Tabas Tr. 115:9-17; 116:14-15) (Statement of Uncontroverted Fact, Exhibit D, ¶ 14.)

Indeed, *pro rata* allocation based on each insurer's time on the risk, is the approved approach under Missouri law. In cases that involve progressive diseases such as asbestosis or mesothelioma, like the Tansey lawsuit, coverage is apportioned according to each insurer's *pro rata* time on the risk during the time period during which Mrs. Tansey was exposed to asbestos-containing materials. *Continental Cas. Co. v. Medical Protective Co.*, 859 S.W.2d 789, 798 (Mo. App. E.D. 1993). Thus, subtracting from the years of exposure those coverage periods subject to an asbestos exclusion, ZAIC and INA were each on the risk for nine years. Therefore, ZAIC is entitled to recover from INA fifty percent of the sums that ZAIC incurred in the defense and indemnification of A-B.

I.     **STATEMENT OF FACTS**

For its Statement of Facts, ZAIC has attached to this Memorandum a Statement of Uncontroverted Material Facts, which it incorporates by reference herein.

## II.     LAW AND ARGUMENT

A.     **ZAIC is entitled to contribution from INA for the sums incurred by ZAIC in defense and indemnification of A-B against the Underlying Lawsuit.**

1.     **Missouri law governs ZAIC's contribution claim against INA.**

District courts, sitting in diversity, are required to use the forum state's choice-of-law rules. *DCS Sanitation Mgmt., Inc. v. Castillo,* 435 F.3d 892, 895 (8th Cir. 2006). Missouri has adopted Sections 188 and 193 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) to determine which state's law governs the interpretation of an insurance policy if it does not contain a choice-of-law provision. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina,* 716 S.W.2d 348, 358 (Mo.App.1986). Under Section 188, the law of the state with the most significant relationship to the transaction and parties governs. Section 188 identifies the significant relationships considered to include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." In addition, Section 193 states the "validity of ... [the] insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy...." Under Section 193's comment b, the location of the insured risk is given greater weight than any other single contact in determining which state's law controls, unless the policy covers a group of risks scattered throughout two or more states.

4

Here, A-B has operations throughout the United States; however, A-B was headquartered in St. Louis, Missouri, and the ZAIC and INA policies were issued to A-B in St. Louis at its corporate headquarters at 721 Pestalozzi Street during the relevant periods in question. Under these circumstances, no other state has a more significant relationship to the ZAIC and INA policies at issue. Therefore, Missouri law should govern this action.

INA does not disagree. INA's corporate designee testified that Missouri law will likely govern this claim. (Tabas Tr. 8:1-3.)

> 2. **In Missouri, if an insurer has paid on a loss in excess of its proportionate share of the coverage obligation, that insurer is entitled to equitable contribution from any other insurers with the same coverage obligations that have not paid their proportionate share toward that loss.**

ZAIC brings this action to recover from INA those sums it paid in excess of its *pro rata* share of liability for A-B's defense and indemnification under overlapping theories -- equitable contribution, equitable subrogation, and unjust enrichment. Equitable contribution is a remedy between two co-obligors. It applies when several insurers are obligated to indemnify the same loss and one insurer has paid more than its share of the loss. *Heartland Payment Systems, L.L.C. v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. App. E.D. 2006). The purpose of this rule of equity is to equalize the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1293 (1 Dist. 1998). When multiple insurers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against the other insurers for equitable contribution when it has undertaken the

indemnification of their common insured. *Id.* As such, equitable contribution allows an insurer to be reimbursed by other insurers, if it has paid in excess of its *pro rata* share of coverage. *Id.*

Equitable subrogation and unjust enrichment provide a similar remedy. Subrogation exists to prevent unjust enrichment. *Missouri Public Entity Risk Mgm't Fund v. American Cas. Co. of Reading*, 399 S.W.3d 68, 74 (Mo. App. W.D. 2013). The remedy is also available to an excess insurer to bring a claim against a primary insurer to recover for a settlement that the primary insurer was obligated to pay. *Id.* at 76. Here, this remedy is available to ZAIC because the $900,000 in primary coverage under the ZAIC policies was insufficient to pay the entire $1.5 million settlement. Thus, ZAIC necessarily funded $600,000 of the settlement from the excess coverage parts of its policies.

A-B has acknowledged ZAIC's right to contribution against INA. Before ZAIC settled the underlying claim on A-B's behalf, A-B's representative, Seth Hawkins, acknowledged that ZAIC may have the right to seek contribution from INA for any sums paid by ZAIC because of the Tansey claim and further agreed to cooperate with ZAIC in its efforts to obtain contribution from INA. (Hawk. Tr. 24:1-11; 25:18-25, 26:1-3; Tr. 42:15-16, 22-24) (Ex. 7 to Joint Stipulation of Facts, Bates Number AB000518) (Statement of Uncontroverted Fact, Exhibit D) (Tatara Tr. 36:4-13.) Indeed, on September 24, 2013, before the settlement of the Tansey claim, Mr. Hawkins advised ZAIC as follows:

> AB expects Zurich to attend the mediation with sufficient authority to settle the case. And, as I have said before, once Zurich complies with its obligation to settle the case on AB's behalf, I will be more than happy to cooperate with your efforts to obtain contribution from INA.

(Ex. 7 to Joint Stipulation of Facts, Bates Number AB000518.)

### 3. ZAIC and INA covered the same insured, the same interest, and the same risk.

To maintain a claim for equitable contribution, the two insurers must cover the same insured, the same interest, and the same risk. *Heartland Payment Systems, L.L.C.*, 185 S.W.3d at 232. An insurer's coverage obligations are determined by a comparison of the underlying complaint against the insured with the terms of the insurer's policy. *McCormack Baron Mgm't Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999). The insurer's ultimate duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example, by settlement. *Id.* at 173.

Here, ZAIC is entitled to contribution from INA for the sums it incurred on behalf of A-B, because INA provided the same insured, A-B, with coverage of the same interests and risks presented in the Tansey claim. The Tansey claim asserted that Mrs. Tansey was exposed to asbestos-containing materials, because of her husband's employment at A-B from 1971 to 1989. (Joint Stipulation of Facts, ¶¶ 2-3.) Both INA and ZAIC provided liability insurance coverage for personal injury claims, which included coverage for wrongful death, caused by an occurrence arising out of A-B's operations. Both insurers, per the insuring agreements in their policies, also had the "right and duty to defend any suit against [A-B] seeking damages on account of such personal injury." Just as significantly, for the eighteen-year coverage period between 1971 and 1989, neither the ZAIC nor the INA policies were subject to an asbestos exclusion. As such, during this eighteen-year period, from 1971 to 1989, the Tansey claim unquestionably implicated the same coverage under both the ZAIC and INA policies.

7

Equally important, under Missouri law, in cases involving progressive diseases, such as asbestosis, the "exposure" theory has been held to be the applicable trigger of coverage. *Continental Cas. Co. v. Med. Protective Co.*, 859 S.W.2d 789, 792 (Mo. App. E.D. 1993) (citing *Ins. Co. of North America v. 48 Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980)). The "exposure" theory addressed by the Missouri Court of Appeals *in Continental Cas. Co.* comports with the subsequent decision of the Missouri Supreme Court in *D.R. Sherry Const. Ltd. v. Amer. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 905-06 (Mo. banc 2010). There, the Missouri Supreme Court recognized that an occurrence-type insurance policy "covers cases of progressive injury where the *cause* of the damage is *present* during the policy period but the damage is not apparent until after the policy period." (Emphasis added.) Likewise, the Eighth Circuit, addressing Missouri law, has recognized that claims involving prolonged exposure to a contaminant causing harm may implicate coverage under each applicable policy period during which "exposure" has occurred. *Continental Ins. Cos. v. N.E. Pharmaceutical & Chem. Co.*, 842 F.2d 977, 984 (8th Cir. 1988).

In this case, the cause of Mrs. Tansey's injury, namely, her exposure to asbestos-containing materials emanating from her husband's work clothes, was present throughout the time periods that A-B was insured by INA and ZAIC. Therefore, Mrs. Tansey's claim implicated coverage under both the ZAIC and INA policies' coverage periods, because she was exposed to asbestos-containing materials during those periods. *Continental Cas. Co.*, 859 S.W.2d at 792. Stated otherwise, during both INA and ZAIC coverage periods, the cause of her

injury, asbestos, was present. *D.R. Sherry*, 316 S.W.3d at 905-06.  Hence, ZAIC and INA insured A-B against the same interests and risk, and INA must contribute its *pro rata* share.

    4.    **Each insurer's proportionate share of liability is a function of each insurer's "time on the risk."**

ZAIC is entitled to recovery from INA because ZAIC insured only nine of the eighteen years during which A-B had liability coverage for asbestos-related claims, whereas INA insured the other nine years. Therefore, ZAIC, in bearing the cost of A-B's defense and settling the Tansey claim, incurred defense and indemnifications costs on A-B's behalf in excess of its proportionate share of liability for the claim.

The respective times on the risk of each of insurer determines the sum that ZAIC is entitled to recover in contribution from INA. There is no dispute between ZAIC and INA over this allocation formula. INA agrees with ZAIC that the sums paid by ZAIC in defense and settlement of the Tansey claim should be allocated by using a *pro rata* time-on-the-risk allocation. (Tabas Tr. 115:9-17; 116:14-15) (Statement of Uncontroverted Fact, Exhibit D, ¶ 14.)

Indeed, time on the risk is the approach adopted by Missouri courts to determine the relative shares of liability of consecutive insurers insuring the same risk. Under Missouri law, in cases involving progressive diseases, liability among consecutive insurers providing coverage during the time period when the injured party was exposed to asbestos is prorated based on each insurer's time on the risk. *Continental Cas. Co. v. Med. Protective Co.*, 859

9

S.W.2d 789, 792 (Mo. App. E.D. 1993) (citing *Ins. Co. of North America v. 48 Insulations, Inc.*, 633 F.2d 1212, 1224-25 (6th Cir. 1980)).

In *Continental Cas. Co.*, the Missouri Court of Appeals considered how to allocate a dental malpractice claim among three consecutive insurers providing professional liability insurance coverage to the insured dentist in a case in which the allegedly negligent dental treatment that led to the patient's tooth loss occurred over a period of almost twenty years. The appellate court held that "[w]here the loss is caused not by a single event but by a series of cumulative acts or omissions, we believe the fair method of apportioning the loss among consecutive insurers is *by application of the 'exposure theory' utilized in cases of progressive disease such as asbestosis.*" *Id.* at 792 (emphasis added.) Thus, the court concluded the insured's liability for the tooth loss should be prorated among the consecutive policy periods over the entire period during which the dentist treated the plaintiff. *Id.* at 792. Accordingly, the court held each primary insurer liable based upon its time on the risk. *Id.*

The Missouri Court of Appeals, in so holding, focused on the language in the insurers' policies, which, as is the case with the ZAIC and INA policies, limited each insurer's coverage obligation to injuries occurring during their respective policy periods, namely, "*during the term of each policy*." *Id.* at 791 (emphasis in original)[1]. Based on this language, the court, in

---

[1] ZAIC, under its policies, only agreed to provide A-B liability coverage for personal injury that occurred "DURING THE POLICY PERIOD WITHIN THE POLICY TERRITORY . . . ." (Joint Stip., Ex. 2 at p. 8; Ex. 3 at p. 11.) Likewise, coverage under the INA policies is also limited to personal injury that occurred "DURING THE POLICY PERIOD WITHIN THE POLICY TERRITORY." (Joint Stip., Ex. 4 at p. 14.)

10

adopting a "time on the risk" allocation model, explained that "[n]one of the [insurers] agreed to pay damages for injuries resulting from acts or omissions which occurred before the inception of coverage or after the termination of coverage." *Id.*

Here, ZAIC only undertook to insurer A-B for damages occurring during its coverage period from 1971 to 1980. Therefore, under the rule in *Continental Cas. Co.*, ZAIC is entitled to contribution from INA to the extent ZAIC indemnified A-B for damages flowing from Mrs. Tansey's exposure to asbestos-containing materials during INA's time on the risk.

Moreover, the United States Court of Appeals for the Eighth Circuit has held that the "time on the risk" rule is the appropriate model for allocation of a loss among consecutive insurers. In *Nationwide Ins. Co. v. Central Mo. Elec. Coop.*, 278 F.3d 742, 748 (8th Cir. 2001) (applying Missouri law), the Eighth Circuit held, in an action arising from underlying claims brought by customers who had sustained damage due to an energy supplier's defective transformer, that the time-on-the-risk analysis was the appropriate method for apportioning damages between the two insurers that provided liability coverage to the insured during the applicable time period. Similarly, in *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1396 (8th Cir. 1996) (applying Minnesota law), the Eighth Circuit held in cases in which insurers are held consecutively liable, and there is no evidence allocating the timing of the plaintiff's actual damages, that the proper method is to allocate damages *pro rata* by each insurer's "time on the risk."

This rule, as agreed to by INA, governs ZAIC's claim for contribution against INA for the defense costs that ZAIC incurred on A-B's behalf in defending the Tansey claim. The

11

Missouri Court of Appeals, in *Continental Cas. Co.,* stated "it is appropriate to apportion the cost of defense on the same basis as the apportionment of the settlement of the claim for damages"—*i.e.*, *pro rata* based on each insurer's time on the risk. 859 S.W.2d at 793.

Under these circumstances, based on each insurer's *pro rata* share, ZAIC is entitled to recover fifty percent of the sums that ZAIC incurred on A-B's behalf in defense and settlement of the Tansey claim. Both ZAIC and INA insured A-B for nine years of the eighteen-year period during which A-B had insurance coverage for personal injury claims not subject to an asbestos exclusion.[2] On behalf of their mutual insured, ZAIC paid $1.5 million to settle the Tansey claim and incurred $79,298.12 in defense costs. Therefore, judgment for ZAIC and against INA should be entered in the sum of $789,649, which represents INA's one-half *pro rata* share of the sums paid by ZAIC in defense and indemnification of A-B against the Tansey claim.

B.   **INA's defenses do not deprive ZAIC of the right to summary judgment against INA on its contribution claim.**

   1.   **The Deductible Endorsements to the INA Policies do not defeat ZAIC's right to contribution from INA.**

ZAIC anticipates INA will assert that is not bound to contribute to the defense and settlement of the Tansey claim unless and until the deductible amounts under the INA policies are met by A-B. From July 1, 1980, until July 1, 1986, the INA policies were subject to a

---

[2] From 1989 to 1996, during which Mrs. Tansey continued to be exposed to asbestos-containing materials, the INA policies contained an asbestos exclusion. Therefore, ZAIC has limited its contribution claim against INA to the nine-year INA coverage period during which the INA policies did not contain an asbestos exclusion.

12

$250,000 deductible per policy year. Beginning on July 1, 1986, the deductible amount increased to $1 million per year, which sum equaled the stated limit of liability under the INA policies in effect from July 1, 1986, until July 1, 1989.

The deductibles under the INA policies do not defeat ZAIC's contribution claim. The plain language of the Deductible Endorsements provide:

IT IS AGREED THAT:

1)   a.   [INA]'S OBLIGATION TO PAY DAMAGES ON BEHALF OF THE INSURED UNDER THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED APPLIES ONLY TO DAMAGES IN EXCESS OF THE DEDUCTIBLE AMOUNTS STATED IN THE DECLARATIONS.

     b.   *HOWEVER, IF THE NAMED INSURED, OR A CLAIMS SERVICING ORGANIZATION ACTING ON BEHALF OF THE NAMED INSURED, FAILS TO PAY ANY DAMAGES WITHIN THE DEDUCTIBLE AMOUNTS AFTER THE LEGAL OBLIGATION OF THE NAMED INSURED BECOMES DEFINITELY DETERMINED, [INA] SHALL PAY SUCH DAMAGES....* (Emphasis added.)

(Tabas Tr. 48:12-24, 49:1-23) (Joint Stip. Ex. 5.)

The plain language of paragraph b. of the Deductible Endorsement demonstrates that INA cannot escape its obligation to pay its *pro rata* share for the defense and indemnification of the Tansey claim, because A-B has not paid the applicable deductible amount for each applicable INA policy year. These provisions make plain that if A-B has not paid the applicable deductible on a claim, then INA must do so. In the absence of such a payment, INA must now make the required payment to ZAIC.

All requirements for INA's payment to ZAIC of the deductible amounts are met.

13

The $1.5 million settlement constituted a payment for damages. INA's corporate designee, Mitchell Tabas, has conceded that the settlement applied to "any and all . . . damages, costs, expenses, and attorneys' fees" presented by the Tansey claim. (Tabas Tr. 67:1-13.) Moreover, the settlement agreement constitutes a legal obligation of A-B. A-B is a signatory to the settlement agreement. INA admits that a legal obligation can be created by contract. (Tabas Tr. 50:9-15; 51:7-18.) Finally, by entering into the settlement with the underlying plaintiffs for $1.5 million, A-B's legal obligation to Mrs. Tansey's estate had become definitely determined. (Tabas Tr. 51:18.)

Moreover, the Eighth Circuit's recent decision in *Continental Cas. Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 812 F.3d 1147 (8th Cir. 2016) (applying Minnesota law), conclusively rebuts any argument that INA may make under the Deductible Endorsement. There, the Eighth Circuit held that a co-insurer had an equitable obligation to contribute to the insured's defense, despite the fact that the co-insurer's policy provided coverage under a "fronting arrangement" in which the insured was required to reimburse the insurer for the costs that it had incurred on the insured's behalf.[3] The Eighth Circuit, in so ruling, explained that "[c]ontribution is a mechanism for fairly allocating the costs incurred by insurers in discharging their overlapping obligations. As such, it is unaffected by amounts paid by the insured (or anyone else) unless an insurer reimburses or becomes liable for them." *Id.* at 1153. Thus, as held by the Eighth Circuit:

---

[3] A fronting policy is one in which the insured's deductible is equal to the policy's limits. *Terra Indus., Inc. v. Nat'l Union Fire Ins. Co.*, 383 F.3d 754, 756 (8th Cir. 2004).

14

> [f]ar from being free from any obligation to pay for [the insured's defense], . . . , [the co-insurer] was on the hook unless and until [the insured] performed or [the co-insurer] exercised its rights [to seek reimbursement]. . . . The possibility that [the co-insurer] might in turn recoup its expenses from [the insured] does nothing to change the basis for that right as between [the insurer seeking contribution] and [the co-insurer].

812 F.3d at 1151.

ZAIC anticipates that INA may also assert it has no obligation to contribute to the defense and settlement of the Tansey claim based on the "claims servicing organizations" exception set forth in the INA policies' Deductible Endorsements. The exception, however, has no application. Consider the language from paragraph 5 of the Deductible Endorsement:

> WHEREAS INA HAS ENTERED INTO A WRITTEN AGREEMENT WITH CLAIMS SERVICING ORGANIZATIONS, UNDER WHICH THE CLAIMS SERVICING ORGANIZATIONS AGREE TO PROVIDE INVESTIGATION, DEFENSE AND SETTLEMENT SERVICES ON BEHALF OF THE INSURED, IN CONNECTION WITH CLAIMS MADE OR SUITS BROUGHT FOR WHICH INSURANCE IS PROVIDED BY THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED, IT IS UNDERSTOOD AND AGREED THAT THE COMPANY HAS NO DUTY OR OBLIGATION TO PROVIDE INVESTIGATION, DEFENSE OR SETTLEMENT SERVICES WITH RESPECT TO SUCH CLAIMS . . . SO LONG AS SUCH AGREEMENT WITH THE CLAIMS SERVICING ORGANIZATION REMAINS IN EFFECT.

(Tabas Tr. 68:9-24, 69:1-8) (Joint Stip. Ex. 5.)

A "claims servicing organization" is an entity with which INA has contracted to provide its insured a defense. According to INA's corporate designee witness, Mr. Tabas, the term refers to an independent organization that an insurer may contract with to handle their claims. (Tabas Tr. 69:13-17.) The exception has no application here. For the Tansey claim, INA did not afford A-B any investigation, defense, or settlement services of any kind. It is undisputed

15

that INA never accepted coverage for the Tansey claim before it was settled, or at any other time. Moreover, no claims servicing organization was involved in the Underlying Lawsuit on A-B's behalf by virtue of a contract between INA and such an organization. Neither INA nor ZAIC would reasonably qualify as such an organization, as INA's corporate designee all but conceded. (Tabas Tr. 69:9-12, 70:9-17.)

        2.    **INA's affirmative defense of laches fails as a matter of law.**

INA has pleaded the affirmative defense of laches. INA's corporate designee witness testified that the doctrine of laches "may apply" to ZAIC's contribution claim in that Zurich waited from 2009 until 2013 to assert its claim against INA. (Statement of Uncontroverted Fact, Exhibit F, ¶ 17.) INA's very assertion of laches as a defense suggests that INA agrees that it would have owed contribution to ZAIC but for ZAIC's purportedly belated assertion of its contribution claim. Regardless, INA's defense fails as a matter of law.

"Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Port Perry Marketing Corp. v. Jenneman*, 982 S.W.2d 789, 792 (Mo. App. E.D. 1998). For the doctrine to apply, the delay must be "unreasonable and unexplained" and is generally only applied when one party's delay materially prejudices a party-opponent. *Id.* For the doctrine to apply, the defendant must show that the unreasonable delay operates to the defendant's prejudice. *Lyman v. Walls*, 660 S.W.2d 759, 761 (Mo. App. E.D. 1983). "The prejudice which supports laches is generally of two kinds, i.e.: (1) loss of evidence which would

16

support defendants' position and (2) change of position in a way that would not have occurred but for the delay." *Id.*

The undisputed, material facts demonstrate that laches has no application. ZAIC did not delay in asserting its rights. Both ZAIC and INA received notice of the Underlying Lawsuit in 2009. Later, after A-B tendered the Underlying Lawsuit to ZAIC for a defense in October 2012, ZAIC proceeded to place INA on notice of the claim when ZAIC learned in early 2013 that A-B did not intend to tender the claim's defense to INA as well. Throughout 2013, until the settlement in January 2014, ZAIC advised INA of the progress of the Underlying Lawsuit and sought INA's coverage position concerning defense and indemnity. However, at no time did INA provide its coverage position. Thereafter, without receiving any response from INA, ZAIC initiated this contribution action against INA on June 18, 2014, within six months of the settlement of the Underlying Lawsuit, and well within the five-year statute of limitations for a contribution action under Missouri law, MO. REV. STAT. § 516.120, which only begins to run from the date of the settlement and not before. *Greenstreet v. Rupert*, 795 S.W.2d 539, 541 (Mo. App. W.D. 1990). Absent extraordinary facts warranting relief, laches will not bar a suit where the statute of limitation has not run. *Empiregas, Inc. of Palmyra v. Zinn*, 833 S.W.2d 449, 451 (Mo. App. E.D. 1992). Thus, INA's laches argument fails as a matter of law. In no way can INA claim prejudice when it had notice of the Tansey claim at all relevant times and had the opportunity to participate in the defense and settlement of the claim, but did not do so.

### III.   CONCLUSION

Plaintiff Zurich American Insurance Company respectfully requests the Court to grant summary judgment for Plaintiff and against Defendant Insurance Company of North America and order INA to pay Plaintiff the sum of $789,649, which represents INA's *pro rata* share of the costs incurred by Plaintiff in defending and indemnifying A-B against the Tansey claim.

Respectfully submitted,

/s/ T. Michael Ward
Russell F. Watters, #25758MO
T. Michael Ward, #32816MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, Missouri 63101-2501
(314) 421-3400
(314) 421-3128 Facsimile
rwatters@bjpc.com
mward@bjpc.com

Attorneys for Plaintiff
Zurich American Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of May, 2016, the foregoing document was served upon all counsel of record via the Court's ECF filing system.

/s/ T. Michael Ward

12979394