UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:14 CV 1112 CDP |
| INSURANCE COMPANY OF NORTH AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Zurich American Insurance Company (ZAIC) brought this suit for equitable contribution, subrogation, and unjust enrichment against defendants Insurance Company of North America (INA), Anheuser-Busch, LLC (A-B), and Pacific Employers Insurance Company. All parties have jointly stipulated that defendant Pacific Employers should be dismissed from this suit, so Pacific's motion to dismiss shall be granted.

A-B had insurance policies with both ZAIC and INA at various times from 1967 – 2008. In 2008, ZAIC represented A-B's interests in a lawsuit involving asbestos exposure, defending under a reservation of rights. ZAIC reached a settlement on A-B's behalf with the plaintiff in that case, and ZAIC paid the full settlement amount. ZAIC then brought this suit to recover a pro rata share of the

settlement amount from INA for the relevant time periods when INA provided insurance coverage to A-B. After INA filed its answer asserting an affirmative defense of failure to include all necessary and/or indispensable parties including A-B, ZAIC filed an amended complaint adding A-B as a defendant.

In agreement with both ZAIC and INA, but not with A-B, I conclude that under Missouri law ZAIC and INA's obligations are determined by their pro rata share. Each insurance company's pro rata share is based on the coverage period for each insurer, or each insurer's time on the risk. The settlement amount and costs should be divided by the number of years the asbestos plaintiff was exposed, with ZAIC and INA each paying for the years they provided coverage. But when the settlement is prorated in this way, INA's pro rata share for each year is less than its annual deductible. INA cannot therefore be liable to ZAIC for either contribution or subrogation.

Although the issue of whether ZAIC is entitled to relief against A-B is not before me now, A-B has not established that it is entitled to summary judgment of ZAIC's claims against it. A-B's arguments are not sufficient to preclude a claim in equity by ZAIC concerning either A-B's obligation under the deductible endorsements of the INA policies, or its obligation for the uncovered years when the INA policy exclusion left A-B with no asbestos liability coverage.

All parties assert that this case can be resolved on summary judgment motions and have filed motions seeking such relief. But complete relief cannot be granted on motions for summary judgment because ZAIC's motion is not directed to its claim against A-B. Because I am denying A-B's motion for summary judgment, ZAIC's claim against A-B is still pending.

## I. Background

In 2008, the estate of the wife of a former A-B employee filed a wrongful death suit against A-B.[1] The suit alleged that the decedent wife contracted mesothelioma as a result of her husband's exposure to asbestos during his employment as a mechanic with A-B, and her subsequent laundering of his work clothes. The period of alleged exposure occurred between the date of their marriage, July 30, 1971, and the date of the employee husband's retirement from A-B, July 31, 1996. A-B tendered defense of this suit to insurer ZAIC, who agreed to provide A-B with a defense subject to a reservation of rights.[2] The parties settled during a 2014 mediation for $1.5 million – an amount all parties stipulate was reasonable.

---

[1] *Cotter v. Am. Insulation Corp.*, Docket No. MID L 9211 08 (N.J. Super. Ct. Law Div.).
[2] ZAIC initially agreed to participate in the defense of the underlying lawsuit "under a full reservation of rights." Joint Stipulation of Fact Ex. 6 at 2, ECF No. 79-6. Later ZAIC reserved its right to contribution in email correspondence. Joint Stipulation of Fact Ex. 8 at 2, ECF No. 79-8. ZAIC claims agent Brett Tatara also states he verbally reserved all rights of contribution against INA and A-B. Joint Stipulation of Fact Ex. 11, Tatara Dep. 75:3-8, ECF No. 79-11.

A-B purchased Policy No. GA 85-79-000 from ZAIC for the period of July 1, 1967 to July 1, 1972 for personal injury liability and excess liability coverage, among other coverages. Subsequently, A-B purchased Policy No. GA 87-13-500 for the period of July 1, 1972 to July 1, 1980 from ZAIC with similar personal injury and excess liability coverage. Both these policies state in part:

> Zurich will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … personal injury … to which this insurance applies.

Joint Stipulation of Fact Ex. 2 at 4, ECF No. 79-2; Ex. 3 at 4, ECF No. 79-3.

They also contain provisions on "Other Insurance" which state:

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, Zurich shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provision below:
>
> > (A) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, Zurich shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid.

Joint Stipulation of Fact Ex. 2 at 20, ECF No. 79-2.

Beginning July 1, 1980, and continuing for the next seventeen consecutive years, A-B was insured by INA under Policy No. ISG 1065 for bodily injury liability. Starting July 1, 1989, the INA policy included an asbestos exclusion, which the parties stipulate bars liability for INA past that date. Each INA policy is

subject to a deductible endorsement. From July 1, 1980, to July 1, 1986, the deductible amount was $250,000. Thereafter and for the subsequent three years at issue, the deductible amount was $1 million. The INA policy's personal injury coverage includes an exclusion for:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

Joint Stipulation of Fact Ex. 4 at 8, ECF No. 79-4.

## II. **Summary Judgment Standard**

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). Where a factual record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal–Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

As to each summary judgment motion, I have viewed the facts in the light most favorable to the nonmoving party and the following is established for purposes of the summary judgment motions.

## III. Discussion

### A. How is the loss allocated between ZAIC and INA?

Insureds ZAIC and INA admit that they consecutively insured A-B during the July 1971 to July 1996 period of alleged asbestos exposure, and that the asbestos claim falls within their policies' personal and bodily injury coverages. Because ZAIC paid the entire settlement, it now seeks contribution from INA for its pro rata share. INA does not deny that its policies covered the asbestos claim at

issue; however, it argues that (1) under a pro rata allocation of the settlement, any amount that would be allocated to its policies would be less than the deductible amounts or (2) the pollution exclusion in its policies bars coverage. Because I agree that no equitable remedy is justified when the pro rata allocation amount is less than the deductible amount, I need not decide the effect of the pollution exclusion.

There is no conflict of laws issue between the parties. All movants state that Missouri law applies in the interpretation of these insurance policies, and I agree.[3] The insurance company parties, ZAIC and INA, also agree that the proper method for allocating settlement damages between consecutive insurers of the same risk is a pro rata allocation based on each insurer's time-on-the-risk. "Under the pro rata approach, damages are spread proportionately across the entire period during which the damage takes place." *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo. Ct. App. 2013). However, insured A-B argues that a Missouri court would apply an "all sums" allocation method to this

---

[3] ZAIC brings this case based on diversity jurisdiction under 28 U.S.C. § 1332. "A district court sitting in diversity must apply the conflict of law rules for the state in which it sits." *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). In deciding choice of law questions for insurance cases, if the insurance contract does not specify which state's law applies or if the policy insures risks located in a state other than Missouri, Missouri applies Section 193 of the Restatement (Second) of Conflict of Laws. *Curran Composites, Inc. v. Liberty Mut. Ins. Co.*, 874 F. Supp. 261, 264 (W.D. Mo. 1994). Under Section 193, Missouri courts will apply the law of the state where "the principal location of the insured risk" is located, unless another state has a more significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws § 193 (1971). In this case, at the time of the writing of the policies, A-B's principal location was in Missouri and all of the insurance policies stated A-B's Missouri address on their cover pages.

asbestos settlement. Under this method, ZAIC would be liable for the whole settlement, regardless of the coverage period. A-B's argument is based on the language of the ZAIC policy which states that it covers "all sums which the insured shall become legally obligated to pay as damages." Joint Stipulation of Fact Ex. 2 at 4, ECF No. 79-2; Ex. 3 at 4, ECF No. 79-3.

My task is to determine how the Missouri Supreme Court would decide the issue at hand. *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1267-68 (8th Cir. 1997). Although state courts disagree and no Missouri court has directly ruled this issue of insurance policy interpretation in the context of asbestos exposure, there is sufficient case law for me to predict how a Missouri court would address such a settlement allocation dispute.

In a dental malpractice case before the Missouri Court of Appeals where there were repeated acts of negligence over a twenty-year period, the court determined the fairest method of apportioning the settlement among three consecutive insurers to be proration based of the proportionate period of each company's exposure. *Cont'l Cas. Co. v. Med. Protective Co.*, 859 S.W.2d 789 (Mo. Ct. App. 1993). The Court noted the similarity of the malpractice case to asbestos exposure situations and cited the Sixth Circuit's application of a pro rata allocation to asbestos litigation. *Id.* at 792 (citing *Ins. Co. of N. Am. v. 48 Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980)). "Where the loss is caused not by

a single event but by a series of cumulative acts or omissions, we believe the fair method of apportioning the loss among consecutive insurers is by application of the 'exposure theory' utilized in cases of progressive disease such as asbestosis." *Cont'l*, 859 S.W.2d at 792. The Missouri court apportioned both the negligence settlement amount and the costs of defense between the consecutive insurers based on the number of days each insurer's policy covered. *Id.* at 793.

The Eighth Circuit applied the *Continental Casualty Co.* findings in allocating a Missouri tort action settlement where consecutive insurers provided coverage to the insured during the time period at issue. *Nationwide Ins. Co. v. Cent. Mo. Electric Coop., Inc.*, 278 F.3d 742 (8th Cir. 2001). The court found that when the precise timing of the suffered injuries is complex, a time on the risk analysis is appropriate. *Id.* at 748. The court affirmed the district court's allocation of damages based on the number of days each insurer's policy covered. *Id.*

I conclude that a Missouri court would allocate the settlement and costs in this case between consecutive insurers ZAIC and INA based on the amount of time each insurer provided liability insurance to A-B during the exposure period.[4]

---

[4] As stated above, ZAIC did not seek summary judgment against A-B and it makes no argument in its briefs for any allocation to A-B for the seven years when there was no coverage due to the asbestos exclusion in the INA policies. These "bare years," or years when A-B had no coverage, are mentioned multiple times in the deposition testimony of ZAIC claims representatives Kelli Belpedio and Brett Tatara. See Joint Stipulation of Facts Ex. 10, Belpedio Dep. 42:12-45:2, ECF No. 79-10; Ex. 11, Tatara Dep. 21:1-6-23, 92:13-17, ECF No. 79-11 ("[W]e're seeking

## B. Is ZAIC entitled to contribution or subrogation from INA?

ZAIC brings this case seeking a remedy in equity. Equitable contribution is a means of recovery which requires the insurers of a commonly insured loss to prorate the loss in proportion to the amount of coverage available under their respective policies. *Federal Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164 (Mo. Ct. App. 2005). Through this standard of recovery, an insurer who pays more than its share of the claim is able to recover the excess from the other insurer. *Id.*; *Heartland Payment Sys., LLC v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. Ct. App. 2006). Similarly, the doctrine of equitable subrogation is an equitable remedy utilized to compel the payment of a debt by one who in justice, equity, and good conscience should pay it. *Street v. National Life Ins. Co.*, 347 S.W.2d 455, 459 (Mo. Ct. App. 1961).

According to the Missouri Supreme Court, subrogation exists to prevent unjust enrichment. *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo. 2002) (citing *Tucker v. Holder*, 225 S.W.2d 123, 126 (Mo. 1949)). A claim for unjust enrichment under Missouri law has three elements: 1) a benefit conferred by a plaintiff on a defendant; 2) the defendant's appreciation of the fact of the benefit; and 3) the acceptance and retention of the benefit by the defendant in

---

contribution from INA for the years that they don't have exclusions, as well as the bare years from A-B.")

circumstances that would render that retention inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006).

INA does not deny that this asbestos settlement falls within its policies' coverage for personal injury liability, nor does it dispute the application of a pro rata allocation of the settlement under Missouri law. In defense, INA argues that (1) its policies do not pay damages within the deductibles and (2) the pollution exclusion in the policies bars coverage.

ZAIC paid the underlying asbestos litigation settlement of $1.5 million and incurred $79,298.12 in defense costs. The parties disagree on the number of years over which the settlement should be allocated. ZAIC argues that the appropriate pro rata allocation would be allocating half of the settlement and defense costs to ZAIC for its nine years of coverage (July 1971 to July 1980) and the other half to INA for its subsequent nine years of coverage (July 1980 to July 1989). This would result in each insurer being responsible for approximately $789,649. Spreading this amount over nine years of coverage would make INA responsible for approximately $87,739 per year. Although INA agrees with a pro rata allocation, it argues that the settlement should only be allocated over the fifteen year period of 1971 to 1986 because in 1986 the INA deductible amount increased to equal the policy limit amount, thereby making the policy self-insurance. An allocation over fifteen years would equate to approximately $105,287 per year.

The INA policy deductible amounts were $250,000 to $1 million per policy year. Therefore, I need not decide if INA's policies starting in 1986 were considered self-insurance, because regardless of which number of allocation years is used, both annual allocation amounts are less than the deductible.

In response, ZAIC relies on an INA policy deductible endorsement to argue that INA should pay the allocation amount despite it being less than the deductible. The INA policy deductible endorsement states:

> 1) a. [INA's] obligation to pay damages on behalf of the insured under the policy to which this endorsement is attached applies only to damages in excess of the deductible amounts stated in the declarations.
>
> b. However, if the named insured, or a claims servicing organization acting on behalf of the named insured, fails to pay any damages within the deductible amounts *after the legal obligation of the insured becomes definitely determined*, [INA] shall pay such damages and the named insured shall reimburse [INA] promptly for any part of the deductible amount that has been paid by [INA].

Joint Stipulation of Fact Ex.5 at 2, ECF No. 79-5 (emphasis added). ZAIC considers the settlement agreement in the underlying asbestos litigation to constitute a "definitely determined" legal obligation. ZAIC asserts that A-B's failure to pay the legal obligation since the settlement in January 2014, triggers INA's responsibility to pay on A-B's behalf and then seek reimbursement from it.

Interpretation of an insurance policy is a question of law. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d. 205, 209 (Mo. Ct. App. 1995). The policy language must be given its ordinary and "plain meaning, consistent with the

– 12 –

reasonable expectations, objectives, and intent of the parties." *Id*. This entire case, including the pending summary judgment motions, is premised on the question of which party is liable for what amount of the settlement and costs. The plain meaning of the policy language "the legal obligation of the insured" did not become "definitely determined" at the time of the settlement. There was no finding of liability on the part of A-B in the settlement agreement, which stated that "no party shall be deemed to have admitted liability or fault with respect to the alleged incident or incident giving rise to the Action." Joint Stipulation of Fact Ex. 9 at 5, ECF No. 79-9. It is only with this ruling that the parties' legal obligations become definitely determined. Insured A-B has not failed to pay damages under INA's deductible endorsement provision which INA is now responsible for paying. The issue of failure to pay is not ripe for review because the obligation has just now become definitely determined under the plain meaning of the insurance policy.

Alternatively, ZAIC relies on the Eighth Circuit case *Continental Casualty Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 812 F.3d 1147 (8th Cir. 2016), to argue that equitable contribution requires a co-insurer to contribute to the insured's defense even if the insured is required to reimburse the insurer for the costs. In that case based on Minnesota law, the insurers were arguing over the duty to defend when one insurer's policy is a "fronting arrangement," requiring the

insured to reimburse the insurer for some defense costs. *Id*. at 1148-50. Ultimately the Eighth Circuit relied on a Minnesota Supreme Court case to decide that a co-insurer has a duty to defend and incurs potential liability to co-insurers even when they can then seek reimbursement from the insured. *Id*. at 1150-51. The court looked to specific policy provisions relating to the duty to defend and reimbursement in making its determination. Duty to defend is not at issue in this case, and even if a duty to defend existed on the part of INA, the uncontroverted facts in the record demonstrate that A-B never tendered its defense to INA. Joint Stipulation of Fact Ex. 13, Hawkins Dep. 14:18-21, ECF No. 79-13. *Continental Casualty Co.* is distinguishable: the court relied on Minnesota state law which is not applicable here, and the specific policy provisions are different. The ordinary and plain meaning of the deductible endorsement at issue in this case is that INA is not required to pay any amount within the deductible until such amount becomes a definitely determined legal obligation that A-B has failed to pay.

Because the proper pro rata allocation of the settlement in this case results in INA owing an amount less than the policy deductibles, no equitable relief is required. Equitable contribution and subrogation are appropriate remedies where fairness dictates it. There is no unfairness here because the amount allotted to INA's policies is the responsibility of A-B under the deductible endorsements. Until A-B refuses to pay this legal obligation, which is only now definitely

determined, no obligation has been created for insurer INA to pay and seek reimbursement.  Equity does not require payment by INA of A-B's debt.  When ZAIC paid the $1.5 million settlement plus defense costs, a benefit was conferred on defendant A-B – not on INA.  INA was not unjustly enriched by ZAIC's actions and no equitable subrogation is justified.  As a result, I do not need to decide on parties' arguments as to whether the pollution exclusion in the policies bars coverage, whether the pollution exclusion defense was raised in a timely manner, and whether A-B's tender of the underlying lawsuit to ZAIC prevents equitable claims against INA now.

### C.  Is ZAIC entitled to contribution or subrogation from A-B?

Although ZAIC did not seek summary judgment against A-B on its claims, A-B does seek summary judgment against ZAIC.  A-B argues that ZAIC's equitable claims against it should be denied because (1) ZAIC's insurance policy requires payment of "all sums," therefore no contribution or pro rata claim exists against A-B, (2) the relationship between the parties is contractual so ZAIC has no right to judicially created equitable remedies that exist only between insurers, (3) ZAIC never reserved its right to seek contribution from A-B when it paid the $1.5 million settlement, and (4) equitable contribution and unjust enrichment claims make no sense against A-B in this situation.

A-B attempts to distinguish the Missouri Court of Appeals ruling of a pro rata allocation in *Continental Casualty Co.* and the Eighth Circuit's time on risk allocation in *Nationwide Ins. Co.*, by arguing that such a proration only applies among consecutive insurers. Since A-B and ZAIC are not consecutive insurers to the asbestos liability risk, A-B argues that this court should look to the plain language of the ZAIC policy that covers "all sums which the insured shall become legally obligated to pay as damages."[5] Joint Stipulation of Fact Ex. 2 at 4, ECF No. 79-2; Ex. 3 at 4, ECF No. 79-3. As set forth above, I have already decided that Missouri courts would apply a pro rata allocation to the settlement here, and the "all sums" language of the insurance policy is limited by the policy period. The relationship of ZAIC and A-B as insurer and insured does not change the appropriate allocation method.

A-B also attempts to use a Supreme Court of Delaware case which interprets Missouri law to support its position. *Monsanto Co. v. C.E. Health Comp. & Liab. Ins. Co.*, 652 A.2d 30 (Del. 1994). The Delaware court reversed the lower court's finding of a pro rata apportionment among insurers of the same risk, concluding that Missouri courts would not read a pro rata allocation of coverage into the insurance policy. *Id.* at 35. The court said Missouri would require the plain and

---

[5] A-B cites *Doe Run Res.Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463 (Mo. Ct. App. 2013) as the most recent decision construing Missouri law on this question. However the *Doe Run* court specifically states that it does "not reach the issue of whether Missouri law requires an all sums or pro rata approach." *Id.* at 474 n. 8.

unequivocal terms of the policy to include such proration language, and where a policy is silent, the insurance company is jointly and severally liable to the insured for all sums. *Id.* at 34 (citing *Tinsley v. Aetna Ins. Co.*, 205 S.W. 78 (1918)). This Delaware case is distinguishable because the ZAIC policies at issue here contain express language in the "Other Insurance" provision which contemplates a "contribution by equal shares" when more than one insurance policy applies to the loss. Joint Stipulation of Fact Ex. 2 at 20, ECF No. 79-2. The plain language of the policy anticipates an allocation of loss between multiple insurers. A pro rata allocation is not being read into this policy, as was the case in *Monsanto Co*.

A-B and ZAIC had a contractual relationship from 1971 to 1980 governed by the terms of the insurance policies. ZAIC has admitted its policies covered the asbestos claim for that period in the underlying lawsuit. The time period for which ZAIC seeks contribution and subrogation is the time period for which ZAIC did not cover A-B – in other words, when no contractual relationship existed between the parties. During the alleged asbestos exposure from 1980 to 1996, A-B and ZAIC's relationship is not that of insurer and insured in relation to the alleged exposure risk. Now that A-B's legal obligation is definitely determined under the INA insurance policies, ZAIC can seek recovery from A-B for the time not included in the policy periods covered by ZAIC.

ZAIC reserved rights of contribution from all parties. The doctrine of equitable subrogation is an equitable remedy utilized to compel the payment of a debt by one who in justice, equity, and good conscience should pay it. *Street*, 347 S.W.2d at 459. I am not ruling on whether ZAIC is entitled to equitable relief against A-B, because that motion is not before me now. I will, however, deny A-B's motion seeking summary judgment on the claims against it.

## IV. Conclusion & Remaining Issues

Because ZAIC filed no motion for summary judgment against A-B, only against INA, and I am denying A-B's motion for summary judgment, ZAIC's claims against A-B remain. Any pro rata amount allocated to insurer INA would be within the deductible endorsement provisions, and therefore there is no remedy in equity that requires INA to share in the settlement and defense costs. INA is entitled to summary judgment and will be dismissed from this case. I will set a scheduling conference with counsel for ZAIC and A-B to discuss a schedule for resolving the remaining issues in this case.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Pacific Employers Insurance Company's Motion to Dismiss Party Pursuant to Joint Stipulation [#85] is **GRANTED**.

**IT IS FURTHER ORDERED** that Zurich American Insurance Company's Motion for Summary Judgment [#86] is **DENIED**, and that Insurance Company of

North America's Motion for Summary Judgment [#83] is **GRANTED** as set forth above.

**IT IS FURTHER ORDERED** that Anheuser-Busch Companies, LLC's Motion for Summary Judgment [#80] is **DENIED**.

**IT IS FINALLY ORDERED** that a **telephone scheduling conference** is set for **Monday, December 19, 2016 at 11:00 a.m.**  Plaintiff's counsel is responsible for placing the call and having all parties on the line before contacting my chambers at 314-244-7520.  Counsel for ZAIC and A-B must meet and confer in advance of the conference and file a joint proposed scheduling plan for all matters necessary to the resolution of this action seven (7) days prior to the conference.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2016.