UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:14 CV 1112 CDP |
| INSURANCE COMPANY OF NORTH AMERICA, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

In 2014, plaintiff Zurich American Insurance Company (ZAIC) settled and

paid an asbestos claim on behalf of its insured Anheuser-Busch, LLC (A-B).

During the period of alleged asbestos exposure at issue in the claim, A-B was

consecutively insured by ZAIC and Insurance Company of North America (INA).

ZAIC brought this suit for equitable contribution, subrogation, and unjust

enrichment against INA. After INA asserted a defense of failure to include all

necessary parties, ZAIC added A-B as a defendant. A-B was dismissed from this

lawsuit on May 8, 2018.[1] Before me now are cross-motions for summary

---

[1] The complex procedural background of this case and my reasoning for ultimately dismissing A-B as a defendant based upon the Missouri case of *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 215 (Mo. Ct. App. 2017), are set out at length in my Memorandum and Order of May 8, 2018, *see* ECF No. 90, and will not be restated herein as they are not relevant to the remaining issues before me.

judgment brought by ZAIC and INA on the issue of whether INA owes ZAIC any money for the underlying settlement. Because I conclude that the pollution exclusion in INA's policy bars coverage of the underlying claims as a matter of law, I will grant summary judgment in favor of INA on all claims asserted against it. My analysis follows.

<u>Standards Governing Summary Judgment</u>

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of

submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal–Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

Applying the foregoing standards, I find the following undisputed, material facts relevant to the remaining issues in the case.

<u>Undisputed Facts</u>

In 2008, the estate of the wife of a former A-B employee filed a wrongful death suit against A-B.[2] The suit alleged that the decedent wife contracted mesothelioma as a result of her husband's exposure to asbestos during his employment as a mechanic with A-B. The lawsuit did not involve any asbestos product manufactured by A-B at the brewery. Instead, decedent's husband allegedly carried asbestos and asbestos dust from the A-B brewery where he worked and then the decedent "inhaled and ingested" these asbestos dust particles and fibers when she came into contact with his person and while laundering his work clothes. The complaint alleged that A-B was aware of the need for proper hygiene procedures to insure that asbestos was not carried home on the employees'

---

[2] *Cotter v. Am. Insulation Corp.*, Docket No. MID L 9211 08 (N.J. Super. Ct. Law Div.).

person and work clothes and was further aware of the dangers of asbestos to all those foreseeably exposed to asbestos, including family and household members of A-B employees.  The period of alleged exposure occurred between July 30, 1971 (the date of their marriage), and July 31, 1996 (the date of the employee husband's retirement from A-B).

Discovery conducted in the *Cotter* case established that the decedent's husband came into frequent contact with asbestos while performing maintenance on the brewery's instrumentation and in tunnels beneath the brewery.  Asbestos was floating around in the air and on the floor in piles of dust.  A-B mechanics, including the decedent's husband, were not provided uniforms or laundry service and instead worked in their regular clothes, which they wore to and from work. They would get asbestos all over their clothing and could see the asbestos dust in the air.  Consequently, they took dirt, asbestos dust, and grease with them when they left the job.

A-B tendered defense of the *Cotter* suit to insurer ZAIC, who agreed to provide A-B with a defense subject to a reservation of rights to seek contribution for the periods insured after 1980.[3]  The parties settled during a 2014 mediation for $1.5 million – an amount all parties stipulate was reasonable.

---

[3] INA provided A-B with coverage for the exposure period after 1980, but it did not participate in A-B's defense or contribute to the final settlement.

A-B purchased Policy No. GA 85-79-000 from ZAIC for the period of July 1, 1967 to July 1, 1972 for personal injury liability and excess liability coverage, among other coverages. Subsequently, A-B purchased Policy No. GA 87-13-500 for the period of July 1, 1972 to July 1, 1980 from ZAIC with similar personal injury and excess liability coverage. As stipulated by the parties, endorsements to these policies have excess coverage limits between fifteen and twenty-five million dollars. ECF No. 79 ¶ 7. These policies contain the following provisions:

(1) Coverage for "all sums":

> Zurich will pay on behalf of the insured *all sums* which the insured shall become legally obligated to pay as damages because of … personal injury … to which this insurance applies.
> ECF No. 79-2 at 4; ECF No. 79-3 at 4 (emphasis added).

(2) Limiting language:

> This insurance applies only to bodily injury or property damage which occurs *during the policy period*.
> ECF No. 79-2 at 12; ECF No. 79-3 at 4.

They also contain provisions on "Other Insurance" which state:

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, Zurich shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provision below:
>
> > (A) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, Zurich shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid.

ECF No. 79-2 at 20.

Beginning July 1, 1980 and continuing for the next seventeen consecutive years, A-B was insured by INA under Policy No. ISG 1065 for bodily injury liability. Similar to the ZAIC policies, the INA policy includes:

(1) Coverage for "all sums":

> The Company will pay on behalf of the insured *all sums* which the insured shall become legally obligated to pay as damages because of personal injury, property damage or advertising offense to which this policy applies.
> ECF No. 79-4 at 4 (emphasis added).

(2) Limiting language:

> This insurance applies only to Personal Injury or Property Damage which occurs *during the policy period*.
> ECF No. 79-4 at 15 (emphasis added).

However, unlike the ZAIC policies, the INA policy includes:

(3) An "asbestos exclusion" that began July 1, 1989 and the parties stipulate bars liability for INA past that date.
ECF No. 79 at ¶ 9.

(4) A "pollution exclusion" that excludes coverage for:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does apply if such discharge, dispersal, or escape is sudden and accidental.
> ECF No. 79-4 at 8.

(5) "Deductible endorsements" that specify an annual deductible amount of $250,000 from July 1, 1980, to July 1, 1986, and $1 million from July 1, 1986, to July 1, 1989, and qualify that:

If the named insured … fails to pay any damages within the deductible amounts after the legal obligation of the insured becomes *definitely determined*, the Company shall pay such damages.
ECF No. 79-5 at 5 (emphasis added).

Insurers ZAIC and INA admit that they consecutively insured A-B during the July 1971 to July 1996 period of alleged asbestos exposure. Because ZAIC paid the underlying asbestos litigation settlement of $1.5 million and incurred $79,298.12 in defense costs, it filed this suit seeking contribution from INA. INA denies that it has any obligation to contribute to the defense and settlement of the underlying litigation, claiming that its coverage differs from ZAIC's obligation on the underlying asbestos claim because of the pollution exclusion and deductible endorsements in its policies.

## Discussion

ZAIC and INA each move for summary judgment on the issue of whether INA is responsible for paying any portion of the *Cotter* settlement and defense costs. In the recent case *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251 (Mo. Ct. App. 2017), the Missouri Court of Appeals held that a "targeted insurer" such as ZAIC who pays the entire loss in an asbestos long-tail

claim[4] "may seek contribution from other triggered insurers under the common-law doctrine of contribution or pursuant to each policy's 'other insurance' clause." *Id.* at 264-65 n.15 (quoting *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W. 2d 61, 68 (Mich. Ct. App. 1998)). ZAIC argues that INA's policy provides coverage for the *Cotter* claims and that it is therefore entitled to recover from INA as a "triggered insurer."

ZAIC brings this case seeking a remedy in equity. Equitable contribution is a means of recovery which requires the insurers of a commonly insured loss to prorate the loss in proportion to the amount of coverage available under their respective policies. *Federal Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164 (Mo. Ct. App. 2005). Through this standard of recovery, an insurer who pays more than its share of the claim is able to recover the excess from the other insurer. *Id.*; *Heartland Payment Sys., LLC v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. Ct. App. 2006). The doctrine of equitable subrogation is an equitable remedy utilized to compel the payment of a debt by one who in justice, equity, and good conscience should pay it. *Street v. National Life Ins. Co.*, 347 S.W.2d 455, 459 (Mo. Ct. App. 1961). According to the Missouri Supreme Court, subrogation exists to prevent unjust enrichment. *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo.

---

[4] "Long-tail claims involve allegations of continuous or escalating damages over a range of time, sometimes spanning several years, or even decades; this is often the case for asbestos claims." *Nooter*, 536 S.W.3d at 259.

2002) (citing *Tucker v. Holder*, 225 S.W.2d 123, 126 (Mo. 1949)).  A claim for

unjust enrichment under Missouri law has three elements: 1) a benefit conferred by

a plaintiff on a defendant; 2) the defendant's appreciation of the fact of the benefit;

and 3) the acceptance and retention of the benefit by the defendant in

circumstances that would render that retention inequitable.  *Hertz Corp. v. RAKS*

*Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006).

INA advances two arguments that it is not liable to ZAIC as a matter of law.

INA first contends that it is not in the same coverage position as ZAIC with respect

to the *Cotter* settlement because the pollution exclusion in its policies bars

coverage for the underlying claim.  There is no dispute that if the pollution

exclusion applies in this case, then INA owes no coverage for the *Cotter* suit and

ZAIC could not seek contribution or subrogation against INA as a matter of law.

ZAIC responds that INA failed to plead the pollution exclusion as an affirmative

defense, and therefore waived its right to assert it.  Alternatively, ZAIC contends

that the pollution exclusion does not apply as a matter of law.

*Did INA Properly Assert the Pollution Exclusion as an Affirmative Defense?*

Federal Rule of Civil Procedure 8(c) requires affirmative defenses to be

raised in a responsive pleading.  Whether the pollution exclusion in INA's

insurance policies is an affirmative defense is a question of Missouri state law.  *See*

*First Union National Bank v. Pictet Overseas Trust Corp., LTD.*, 477 F.3d 616,

9

621-22 (8th Cir. 2007). In Missouri, insurers must plead exclusions to liability as an affirmative defense. *See Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 23 S.W.3d 874, 877 (Mo. Ct. App. 2000). INA does not dispute this but contends that it sufficiently pleaded its pollution exclusion as follows in its Twelfth Affirmative Defense:

> 56. The Plaintiff is not entitled to contribution, subrogation, indemnity, unjust enrichment or any other form of relief on the grounds that the Underlying Claim does not come within the coverage afforded by the Defendant's policy and/or the Underlying Claim is within an exclusion from coverage, including but not limited to asbestos exclusions.

ECF No. 59 at 15. It is not disputed that the INA policy contains an explicit "asbestos exclusion," which began in July 1, 1989 and is separate from the pollution exclusion relied upon by INA here. The issue, then, is whether INA's affirmative defense based upon exclusions from coverage, including "asbestos exclusions," is sufficient to encompass an affirmative defense that asbestos is also considered an irritant, contaminant, or pollutant under the pollution exclusion. While an affirmative defense must be asserted in a responsive pleading, "it need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its bare assertion." *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997). Although the Twelfth Affirmative Defense may not be a model of clarity, given INA's argument that asbestos is part of the pollution exclusion in this case I conclude that INA sufficiently pleaded all of its "asbestos

exclusions," including the pollution exclusion, as an affirmative defense for purposes of preserving it as an issue for summary judgment and/or trial.[5]

*Does the Pollution Exclusion Apply to Cotter?*

INA contends that its pollution exclusion bars coverage of the *Cotter* case because it involved an "irritant, contaminant, and/or pollutant" which "discharge[d], dispers[ed], release[d], or escape[d]" into "the atmosphere," thereby injuring the underlying decedent. According to the underlying suit, the decedent was exposed to asbestos through the air as she came into contact with her husband and his work clothes. INA argues that this type of contamination is covered by the plain language of the pollution exclusion, which precludes coverage for bodily injury "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water . . . ."[6] I agree that the plain language of the pollution exclusion bars coverage of the *Cotter* claims.

---

[5] Although I denied leave to INA to amend its answer, contrary to ZAIC's argument I never specifically addressed the issue of whether INA should be permitted to rely on its pollution exclusion as an affirmative defense. ECF No. 74. As INA sufficiently pleaded this affirmative defense, ZAIC's arguments that INA waived or is estopped from asserting it fail. In any event, as ZAIC itself acknowledged in its pretrial briefing, "the doctrines of waiver and estoppel are not available and will not apply in situations to create coverage where coverage is not provided by or is excluded under the policy." ECF No. 143 at 7. The same reasoning applies here.

[6] ZAIC does not dispute that the asbestos was "discharged, dispersed or released."

Interpretation of an insurance policy is a question of law. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d. 205, 209 (Mo. Ct. App. 1995). When interpreting an insurance policy, a court must "give terms their plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). If the policy language is unambiguous, it must be enforced as written. *Id.* However, if the language is ambiguous, courts should construe the policy in favor of the insured. *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). The mere "fact that parties disagree over the policy's interpretation does not render a term ambiguous." *O'Rourke v. Esurance Ins. Co*., 325 S.W.3d 395, 398 (Mo. Ct. App. 2010). Rather, "ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different interpretations.*" Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation marks and citation omitted). "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 512 (Mo. 2017) (quoting *Rodriguez v. Gen. Accident Ins. Co. of Am*., 808 S.W.2d 379, 382 (Mo. banc 1991)). "In construing insurance policies, Missouri courts apply the meaning

which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Williams v. Employers Mutual Cas. Co.*, 845 F.3d 891, 902 (8th Cir. 2017) (internal quotation marks and citations omitted). The burden of proving the pollution exclusion lies with INA. *See Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). However, this rule "does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating ambiguity where none exists." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 665 (Mo. Ct. App. 2001). "The rules of construction are inapplicable when an insurance policy is ambiguous. The policy must be enforced as written." *Id.*

Here, INA has met its burden of demonstrating that the pollution exclusion applies. There is no ambiguity in the terms of the policy, which plainly bars coverage for the types of asbestos claims raised in the *Cotter* case. The terms "irritant, contaminant and/or pollutant" and "the atmosphere" are not defined in the policy, so "Missouri courts look to the ordinary meaning of the word, as set forth in the dictionary." *Williams*, 845 F.3d at 905. "The dictionary definition of 'contaminant' is 'something that contaminates.'" *Id.* (quoting Merriam-Webster's Collegiate Dictionary 269 (11th ed. 2012)). "To 'contaminate,' in turn, is defined as 'to soil, stain, corrupt, or infect by contact or association,' or 'to make unfit for use by the introduction of unwholesome or undesirable elements.'" *Id.* (quoting

Merriam-Webster's Collegiate Dictionary 269 (11th ed. 2012)).  "An irritant is 'something that irritates,' that is, 'produces irritation.'"  *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 884 (8th Cir. 2014) (quoting Webster's Third New International Dictionary 1197 (2002)).  A "pollutant" is "something that pollutes," which means "to make physically impure or unclean, befoul, dirty, taint."  Webster's Third New International Dictionary 1756 (2002).  The "atmosphere" is defined as "a gaseous mass enveloping a heavenly body," "the whole mass of air surrounding the earth," or "the air of a given place or locality."  Webster's Third New International Dictionary 138 (2002).

ZAIC advances two reasons why the exclusion does not apply.  First, it argues that the policy is ambiguous as to whether asbestos is an irritant or contaminant because it does not "expressly or clearly include asbestos."  "Missouri courts have held that the term 'contaminant' is ambiguous in some circumstances, and unambiguous in others, depending on the purported pollutant and the circumstances of its dispersal."  *Williams*, 845 F.3d at 905.  Relying on language from *American Nat. Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417, 420 (Mo. Ct. App. 2013), ZAIC argues that the terms are ambiguous because "irritant" and "contaminant" "when viewed in isolation, are virtually boundless, for there is [] no substance or chemical in existence that would not irritate or damage some person

or property." *Id.* at 424-25.[7] ZAIC also argues that the exclusion, which requires a release into "the atmosphere," does not apply here because the asbestos releases took place inside a building. ZAIC's arguments are unavailing.

As for ZAIC's first argument, unlike *Wyatt*, here "[a]n ordinary purchaser of insurance would not interpret this policy to exclude coverage for anything that could *potentially* irritate or contaminate." *Doe Run*, 531 S.W.3d at 513 (emphasis

---

[7] In concluding that an acrylic sealant was a pollutant under the unambiguous language of a pollution exclusion similar to the one at bar, the Eighth Circuit dismissed this concern in *Titan* as follows:

> We are mindful of the concern that an unbounded pollution exclusion could swallow up the inclusionary provisions of a policy. *See Pipefitters Welfare Edu. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992). But the text of the exclusion imposes limitations on its own scope separate from the definition of pollutant. For example, the absolute pollution exclusion applies only to harm caused by the "discharge, dispersal, seepage, migration, release or escape" of a pollutant. Thus, the exclusion will not apply, even in cases involving a pollutant, if the pollutant did not propagate in one of these enumerated ways. *See, e.g., Porterfield*, 856 So.2d at 805–06 (holding that, although lead paint constitutes a "pollutant," the absolute pollution exclusion did not apply because flaking of lead paint from walls did not constitute "discharge"); *cf.* Couch on Insurance § 127:9 (3d ed. 2013) (collecting cases). So "if a child were injured because he drank from a bottle of . . . [a] household product, even if that product properly could be classified as a 'pollutant,' the injury would not be covered by the pollution exclusion because the pollutant was not disseminated by one of the prescribed methods." *Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F. Supp. 949, 954 (S.D.N.Y. 1996). Similarly, textual analysis might also avert "absurd results," such as the speculation that the exclusion "would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano." *Pipefitters*, 976 F.2d at 1043. As we have noted previously, the absolute pollution exclusion will not necessarily apply where the substance causing injury has the potential to irritate but has—like the Drano in the hypothetical—caused harm in a manner other than by irritating. *See Sargent Const. Co. v. State Auto. Ins. Co.*, 23 F.3d 1324, 1327 (8th Cir. 1994) (applying Missouri law). We believe that these interpretive principles, grounded in the text of the policy, substantially limit the scope of the absolute pollution exclusion without deviating radically from its actual language.

751 F.3d at 885–86.

in original).  The Missouri Supreme Court as well as the Eighth Circuit Court of

Appeals have distinguished *Wyatt* and its predecessor case, *Hocker Oil Co. v.

Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510 (Mo. Ct. App. 1999), as limited to

their facts.[8]  Instead, "[w]hether a material is an irritant or contaminant turns on the

---

[8] In *Titan*, the Eighth Circuit distinguished *Wyatt*'s reasoning and applicability as follows:

> Titan also cites *American National Property & Casualty Co. v. Wyatt*, 400 S.W.3d 417 (Mo. Ct. App. 2013), which held – relying almost exclusively on cases from other jurisdictions – that an ordinary insurance purchaser reasonably could conclude that "pollutant" includes only traditional environmental pollution.  *Id.* at 426.  Titan does not urge us to adopt this sweeping rule, which conflicts with several Missouri cases that have applied the absolute pollution exclusion to a wider range of substances.  *See, e.g., Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 105-106 (Mo. Ct. App. 2004) (expressly rejecting the argument that "pollutant" is limited to traditional environmental pollution); *Boulevard Inv. Co. v. Capitol Indem. Corp.*, 27 S.W.3d 856, 858 (Mo. Ct. App. 2000) (holding that kitchen grease constituted pollutant).  Given this limited consideration of Missouri case law and its failure even to address contrary authority such as *Heringer* and *Boulevard*, we do not find *Wyatt* especially instructive as to how the Supreme Court of Missouri would decide this case.

751 F.3d at 885.  Moreover, *Wyatt* discounted the use of dictionary definitions to interpret undefined terms in policies, which contradicts the instruction of the Missouri Supreme Court to "use the ordinary meaning of the word as set forth in the dictionary."  *Doe Run*, 531 S.W.3d at 512.  For these reasons, the Court does not find *Wyatt* persuasive authority as to the interpretation of the pollution exclusion at issue in this case.

As for *Hocker Oil*, the *Titan* court similarly distinguished its reasoning as follows:

> We reject Titan's reliance on *Hocker Oil* for two reasons. First, we doubt that the Supreme Court of Missouri would apply *Hocker Oil* in the manner urged by Titan.  As we recently observed, *Hocker Oil*'s approach "was a minority position when adopted, has been almost uniformly rejected by appellate courts in other jurisdictions, and has not since been cited or referred to favorably by the Supreme Court of Missouri."  *Doe Run Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 875 (8th Cir. 2013) (applying Missouri law and rejecting insured's reliance on *Hocker Oil*).  Indeed, not even Missouri's intermediate appellate courts have relied on this aspect of *Hocker Oil* in the fifteen years since the case was decided.  This should come as no surprise, since *Hocker Oil* seems out of step with Missouri's deeply-entrenched rule that a court "may not 'create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate.'"  *Id.* at 875–76 (quoting

effect it has on the environment." *Doe Run*, 531 S.W.3d at 513 (citing *Williams*, 845 F.3d at 906). "The relevant question is not whether the term 'contaminant' might be found ambiguous regarding some other substance in a different factual setting, but whether the term is ambiguous as applied to the particular substance in the factual setting at issue." *Williams*, 845 F.3d at 905 (internal citation omitted).

In the factual context of this case, asbestos unambiguously falls within the exclusion's definition of "contaminants," "irritants," and "pollutants," and the policy is not rendered ambiguous as a matter of law merely because asbestos is not explicitly listed in the exclusion. In *Cotter*, the plaintiff alleged that asbestos inhaled in the air caused the decedent's bodily injury and death from pleural mesothelioma. Plaintiff claimed that the asbestos, asbestos fibers, and asbestos dust to which decedent was exposed were "ultrahazardous to health" and were

---

*Rodriguez v. Gen. Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991)). Thus, we do not find *Hocker Oil* probative of how the Supreme Court of Missouri would decide this case.

Second, even if *Hocker Oil* were to represent the best evidence of Missouri law, its unique facts differ substantially from those presented here. The insured in *Hocker Oil* purchased its insurance from the insurer's "Gasoline Department," and, as a gas station operator, nearly all of its liability risk related in some way to gasoline. Under those circumstances, a reasonable insurance purchaser might be surprised to discover that its policy excludes categorically all harm arising out of the release of gasoline. For this reason, "the court in *Hocker Oil* expressly limited its holding to gasoline." *Doe Run*, 719 F.3d at 874. In contrast, sealing concrete floors represents only a portion—perhaps twenty-five percent—of Titan's business, and Titan uses a number of concrete sealants other than TIAH. Titan faces a wide range of liability risks unrelated to TIAH, and many of those risks would fall within the policy's coverage. Thus, we do not believe that *Hocker Oil* would obligate us to cast aside the unambiguous text of the policy.

751 F.3d at 885.

"released into the air [thereby] creat[ing] dangerous and unreasonable risk of injury

to the lungs [and] respiratory systems" of those "breathing that air and coming into

contact with that dust," including the decedent. ECF No. 79 at 14-15. Plaintiffs

further alleged that A-B ignored the dangers of exposure to asbestos to its

employees and their families, including decedent, and failed to institute proper

hygiene procedures to ensure that "toxic chemicals and substances such as asbestos

containing dust were not carried home on the employees' person and their work

clothing." ECF No. 79 at 29. These claims unambiguously allege that asbestos is

an irritant or contaminant under the ordinary meanings of those words.

In *Cincinnati Ins. Co.*, the Missouri Court of Appeals concluded that "friable

asbestos unquestionably falls into the category of a solid or thermal 'irritant' or

'contaminant' as those words appear in [the policy's definition of] 'pollutant,' and

is therefore a pollutant as that term would be understood by a reasonable person in

the position of the insured. Thus, we find the policy's definition of 'pollutant' is

not vague, ambiguous or overbroad." 54 S.W.3d at 666. In that case, the appellate

court denied coverage for damages caused by the removal of asbestos backed vinyl

tile, which generated asbestos dust under the insurance policy's pollution

exclusion. *Id.* The exclusion precluded coverage for the "discharge, dispersal, . . .

release or escape of 'pollutants,' which the policy defined as "any solid, liquid,

gaseous or thermal irritant or contaminant." *Id.* at 664. The appellate court's

conclusion that friable asbestos -- such as that at issue in *Cotter* -- is "unquestionably" an irritant or contaminant is buttressed by the fact that the federal Clean Air Act classifies asbestos as a "hazardous air pollutant." 42 U.S.C. § 7412(b)(1). "While perhaps not dispositive, federal statutory classification of a substance might trigger the absolute pollution exclusion."[9] *Titan*, 751 F.3d at 885. Similarly, the asbestos fibers and dust alleged to have injured the decedent in *Cotter* unambiguously constitute an "irritant," "contaminant," or "pollutant" under INA's pollution exclusion.

The Missouri Supreme Court recently concluded that an insurance policy's pollution exclusion unambiguously precluded coverage for toxic tort claims arising from alleged industrial pollution. *Doe Run*, 531 S.W.3d at 511. In that case, Doe Run was sued by individuals living in the vicinity of its lead mine in Peru. *Id.* at 510. The plaintiffs alleged bodily harm caused by exposure to toxic emissions emanating from Doe Run's facility. *Id.* Plaintiffs claimed that Doe Run released harmful substances including lead into the environment, creating a dust that permeated the surrounding air and water and settled into their homes, on their furniture, clothing, water, and crops. *Id.* Doe Run tendered defense of these

---

[9] The Court is aware that the exclusion at issue here is not considered an "absolute pollution exclusion" as that term is commonly used in insurance cases because it requires that the pollutant be "released into or upon the land, the atmosphere or any water course or body of water" and not be "sudden or accidental." However, that distinction is irrelevant for purposes of determining whether the policy is ambiguous merely because it does not specify asbestos as a contaminant, irritant, or pollutant.

lawsuits to the defendant insurance company, which refused defense on the ground that the insurance policy's pollution exclusion barred coverage of the claims. *Id.* The exclusion did not cover injury resulting from pollution, which was defined by the policy to include a "discharge, dispersal, … [or] release" of any "solid, liquid, gaseous, or thermal irritant or contaminant . . . ." *Id.* at 511. Relying on the plain language of the policy, the Missouri Supreme Court concluded that the pollution exclusion unambiguously applied to lead, despite it not being explicitly defined in the policy, according to the plain meaning of the terms "irritant" and "contaminant" as set forth in the dictionary. *Id.* The court held that the "effect of the pollution exclusion is clearly to proscribe the types of claims raised in the [underlying lawsuits]," because the allegations clearly alleged that toxic substances were in the air surrounding the mine, the substances harmed people who breathed them, and plaintiffs breathed the impure air. Id. "There is no question this type of pollution is the exact type of damage excluded from coverage under [defendant's] policy." *Id.* The same result is mandated here by the unambiguous language of INA's policy.

The Eighth Circuit reached the same conclusion regarding the applicability of a pollution exclusion in *Williams*, 845 F.3d at 905. In that case, the insured was sued for personal injuries arising from a water supply contaminated by the insured with Radium. *Id.* at 894. The Eighth Circuit concluded that the insurer had no

duty to defend the insured from the underlying suits based upon the pollution

exclusion in the insured's insurance policy. *Id.* at 905. Similar to the case at bar,

the exclusion barred coverage for claims arising out of the discharge or dispersal of

"pollutants," defined to include "irritants or contaminants." *Id.* at 903. The Eighth

Circuit rejected the insured's argument that the policy language was ambiguous

because "virtually any substance can be an irritant or contaminant in some contexts

. . . ." *Id.* at 905. Relying upon the plain meaning of "irritant" and "contaminant"

as defined by the dictionary, the Eighth Circuit determined that the terms were not

ambiguous as applied "to the particular substance in the factual setting at issue."

*Id.* It held that "Radium is unambiguously a contaminant" because "the complaint

alleges that illegal levels of Radium were present in the water supply, creating a

serious risk to the health of [plaintiffs] . . . ." *Id.* "Thus, in the context of the

allegations [in the underlying action], Radium is unambiguously a contaminant

under the ordinary meaning of the word; it both 'corrupted' the water 'by contact,'

and made it 'unfit for use.'" *Id.* at 905-06. The same reasoning applies in the case

at bar. The allegations in *Cotter* alleged that asbestos and asbestos dust were ultra-

hazardous and dispersed or released in the air by A-B, which created a dangerous

and unreasonable risk of injury to the lungs and respiratory systems of those

breathing that air and coming into contact with that dust, including the decedent.

Under *Williams*, asbestos dust and fibers are unambiguously contaminants under

the ordinary meaning of the word because they "corrupted" the air "by contact," and made it "unfit for use."

ZAIC next argues that INA's pollution exclusion does not apply to the *Cotter* case because it requires the discharge to take place in "the atmosphere," which ZAIC interprets to exclude discharges which take place inside buildings. According to ZAIC, this "atmosphere" language has been interpreted to mean that the exclusion applies only to "traditional environmental pollution" cases.[10] This argument fails because it ignores the fact that the exposure at issue in the *Cotter* case occurred not to A-B's brewery employee inside the brewery but instead to his wife who was <u>outside</u> of the brewery. The *Cotter* lawsuit alleged that asbestos traveled from the A-B brewery on the clothes and person of the decedent's husband and was then released in the air when the decedent came into contact with her husband and his clothes in places outside of the brewery. Even if the Court adopts ZAIC's interpretation of "atmosphere" in this case, this type of release clearly and unambiguously constitutes a release "in the atmosphere" because it

_____

[10] ZAIC principally relies upon older cases from other jurisdictions in support of its argument. ECF No. 194 at 10-12. The Court has reviewed these authorities and does not find them persuasive in the factual context of the case. First, they rely on contractual interpretation principles requiring a narrow construction of exclusions favoring coverage for the insured. Missouri courts do not apply that principle when the language, as here, is unambiguous. *See, e.g. Doe Run*, 531 S.W.3d at 512; *Cincinnati Ins. Co*, 54 S.W.3d at 665. These cases also read into the pollution exclusions an assumption that the clause applies only to "traditional forms of environmental pollution" despite the absence of such language in the policies, also in direct contradiction of Missouri's principles of contract interpretation. Moreover, they are easily distinguishable from the case at bar because, as explained, the exposure to the decedent in *Cotter* did not involve a contained release in a building.

occurred outside the confines of the brewery's building.  ZAIC offers no explanation – nor could it – of how the asbestos could travel from inside the brewery and come into contact with the decedent without also being released into the "atmosphere."  There is no ambiguity that the asbestos at issue in *Cotter* was released "into the atmosphere" under the terms of INA's pollution exclusion.

Finally, under the terms of the policy INA bears the burden of demonstrating that the discharge or dispersal of asbestos was not "sudden or accidental."  ZAIC does not contest that INA met its burden of proof on this issue, and the Court concludes that INA has demonstrated that the asbestos at issue in *Cotter* was not suddenly or accidentally discharged, given the parties' stipulation that the decedent in *Cotter* was alleged to have inhaled and ingested the asbestos continuously for more than a decade.  Additionally, A-B allegedly had knowledge of the dangers posed by the toxic dust when it released from the brewery and of the need for hygienic procedures to protect from these dangers, but failed and refused to implement any safety procedures, such as laundry services, to protect those at risk from these dangers.

## Conclusion

Because the INA's pollution exclusion unambiguously excludes coverage for the claims made against A-B in the *Cotter* case, INA has no obligation to contribute to the settlement amount or defense costs paid by ZAIC on behalf of A-

B in the underlying suit. ZAIC's claims for equitable contribution, subrogation, and unjust enrichment against INA necessarily fail as a matter of law where INA's policy bars coverage. Because I conclude that INA is entitled to judgment as a matter of law on all claims asserted against it, I need not and therefore do not consider INA's alternative argument in support of summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Insurance Company of North America's motion for summary judgment [196] is granted as set forth above, defendant Insurance Company of North America shall have judgment in its favor on all claims asserted against it by plaintiff Zurich American Insurance Company; all claims asserted against defendant Insurance Company of North America by plaintiff Zurich American Insurance Company are dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff Zurich American Insurance Company's motion for summary judgment [193] is denied.

A separate Judgment in accordance with this Memorandum and Order and the Memorandum and Order entered on May 8, 2018 is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of May, 2019.